**FILED**

August 20, 2025

Fifteenth Court of Appeals
Christopher A. Prine
Clerk of Court

ACCEPTED
15-25-00116-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 3:43 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00116-CV**

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 3:43:16 AM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

KEN PAXTON, *in his official capacity as Attorney General of Texas* and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS,

*Appellants*,

*v.*

DELIA GARZA, *in her official capacity as Travis County Attorney*, ET AL.; JOHN CREUZOT, *in his official capacity as Dallas County Criminal District Attorney*, ET AL.; and BRIAN M. MIDDLETON, *in his official capacity as District Attorney of Fort Bend County (268th Judicial District)*, ET AL.,

*Appellee*.

On Interlocutory Appeal from the
459th Judicial District Court, Travis County
No. D-1-GN-25-003445 *consolidated with*
No. D-1-GN-25-00351 *and* No. D-1-GN-003581

## RESPONSE BRIEF OF APPELLEE BRIAN M. MIDDLETON IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF FORT BEND COUNTY (268TH JUDICIAL DISTRICT)

JUSTIN C. PFEIFFER
State Bar No. 24091473
GAVRILOV & BROOKS, PC
P.O. Box 56632
Houston, Texas 77256
[Tel.] (832) 312-7900
JPfeiffer@gavrilovlaw.com

*Counsel for* BRIAN M. MIDDLETON, *in his official capacity as Fort Bend County District Attorney (268th Judicial District)*

**ORAL ARGUMENT REQUESTED**

**IDENTIFY OF PARTIES AND COUNSEL**

**Appellants:**
Ken Paxton *in his official capacity as the Attorney General of Texas*
The Office of the Attorney General of the State of Texas

**Appellate and Trial Counsel:**
KEN PAXTON
BRENT WEBSTER
WILLIAM R. PETERSON
WILLIAM F. COLE (lead counsel)
BENJAMIN WALLACE MENDELSON
MEAGAN CORSER
KIMBERLY GDULA
WILLIAM H. FARRELL
William.Cole@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
[Tel.] (512) 979-5561
William.Cole@oag.texas.gov

**Appellees:**
Cause No. D-1-GN-25-003445
Delia Garza *in her official capacity as Travis County Attorney*
José P. Garza *in his official capacity as Travis County District Attorney (53d Judicial District)*
Travis County
James Montoya *in his official capacity as El Paso County District Attorney (34th Judicial District)*
Christina Sanchez *in her official capacity as El Paso County Attorney*
El Paso County

Cause No. D-1-GN-25-003531
John Creuzot *in his official capacity as Dallas County Criminal District Attorney*
Dallas County
Joe Gonzales *in his official capacity as Bexar County Criminal District Attorney*

ii

Bexar County
Sean Teare *in his official capacity as Harris County District Attorney*
Harris County

Cause No. D-1-GN-25-003581
Brian M. Middleton *in his official capacity as District Attorney of Fort Bend County (268th Judicial District)*
Shawn W. Dick *in his official capacity as District Attorney of Williamson County (26th Judicial District)*

Counsel for Cause No. D-1-GN-25-003445
LESLIE W. DIPPEL (lead counsel)
TODD A. CLARK
CYNTHIA W. VEIDT
OFFICE OF DELIA GARZA
TRAVIS COUNTY ATTORNEY
P.O. Box 1748
Austin, Texas 78767
[Tel.] (512) 854-9513
Leslie.Dippel@traviscountytx.gov
*Counsel for Appellees Travis County, Travis County Attorney Delia Garza, and Travis County District Attorney José Garza (53d Judicial District)*

CHRISTINA SANCHEZ
BERNARDO RAFAEL CRUZ (lead counsel)
OFFICE OF CHRISTINA SANCHEZ
EL PASO COUNTY ATTORNEY
320 S. Campbell St., Suite 200
El Paso, Texas 79901
[Tel.] (915) 273-3247
b.cruz@epcountytx.gov
*Counsel for Appellees El Paso County District Attorney James Montoya, El Paso County Attorney Christina Sanchez, and El Paso County*

Counsel for Cause No. D-1-GN-25-003531
ALEXANDRIA OBERMAN (lead counsel)
MICHAEL J. SATIN (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 16th Street, NW

Washington, DC 20006
[Tel.] (202) 626-5567
aoberman@milchev.com
*Counsel for Appellees Criminal District Attorney John Creuzot; Dallas County; Criminal District Attorney Joe Gonzales; and Bexar County*

BRADLEY W. SNEAD (lead counsel)
MICHAEL ADAMS-HURTA
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
[Tel.] 713-572-4321
snead@wrightclosebarger.com

JONATHAN G.C. FOMBONNE
TIFFANY S. BINGHAM
CHRISTOPHER GARZA
OFFICE OF CHRISTIAN D. MENEFEE
HARRIS COUNTY ATTORNEY
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Houston, Texas 77002
[Tel.] (713) 274-5101

*Counsel for Appellees District Attorney Sean Teare and Harris County*

Counsel for Cause No. D-1-GN-25-003581
JUSTIN C. PFEIFFER (lead counsel)
GAVRILOV & BROOKS, PC
(Houston Office)
P.O. Box 56632
Houston, Texas 77256
 [Tel.] (832) 312-7900
JPfeiffer@gavrilovlaw.com
*Counsel for Appellee Brian M. Middleton in his official capacity as Fort Bend County District Attorney (268th Judicial District)*

RANDY T. LEAVITT (lead counsel)
LAW OFFICE OF RANDY T. LEAVITT
1301 Rio Grande St
Austin, TX 78701-1711
[Tel.] (512) 476-4475
randy@randyleavitt.com

C. ROBERT HEATH
BICKERSTAFF HEATH DELGADO ACOSTA
1601 S Mopac Expy., Suite 400
Austin, TX 78746-7017
[Tel.] (512) 404-7821
bheath@bickerstaff.com

*Counsel for Appellee Shawn W. Dick in his official capacity as Williamson County District Attorney (26th Judicial District)*

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL.............................................................. ii

TABLE OF CONTENTS...................................................................................v

INDEX OF AUTHORITIES........................................................................... viii

RECORD REFERENCES ............................................................................ xvii

STATEMENT OF THE CASE...................................................................... xviii

STATEMENT OF ORAL ARGUMENT.............................................................. xix

ISSUE PRESENTED ....................................................................................xx

INTRODUCTION ......................................................................................... 1

STATEMENT OF FACTS .............................................................................. 3

    A. The Challenged Rules ..................................................................... 3

    B. Procedural History ......................................................................... 6

SUMMARY OF THE ARGUMENT ................................................................. 10

STANDARD OF REVIEW............................................................................ 12

ARGUMENT ............................................................................................ 13

I.    APPELLEES ESTABLISH A PROBABLE RIGHT TO RELIEF..................... 14

    A. Section 41.006 of the Government Code Does Not Grant the Attorney General Rulemaking Authority ....................................... 16

    B. Despite § 41.006's Failure to Set Forth the Power to Adopt Rules or Engage in Rulemaking, the Challenged Rules are Invalid Under the Relevant Texas Statutes............................................................. 20

1. The Challenged Rules Contravene Specific Statutory Language ........................................................... 21

    a. By Allowing the Attorney General to Initiate Legal Action, the Challenged Rules Contravene the Statutory Provisions for the Those Legal Actions ............................................... 21

    b. The Challenged Rules Conflict with the Legislative Provision Providing the Attorney General the Authority to Request Information for Human Trafficking Cases Under Specific Conditions ............................................................ 28

2. The Relevant Texas Statutes Do Not Permit the Challenged Rules ................................................................ 30

    a. Section 41.006 Originated as Part of a Reporting Requirement No Longer in Effect .......................................... 31

    b. That a Heretofore Unknown Vehicle for the Attorney General to Supervise Prosecuting Attorneys Began in 1879 is Implausible. ..................................................... 37

    c. The Attorney General's Former Authority in Criminal Appeals Does Not Permit the Rules ...................................... 38

3. The Challenged Rules impose additional burdens inconsistent with the relevant statutory provisions ..................................... 40

C. The Challenged Rules Violate the Separation of Powers Clause by Interfering with the Prosecuting Attorneys' Core Constitutional Authority ........................................................... 42

1. Interference Prong Separation of Powers Clause Challenge ................................................................. 43

2. With Respect to Core Constitutional Authority, the Challenged Rules Deny the Prosecuting Attorneys the Broad Judgment and Discretion He Claims for Himself .............................. 44

II. APPELLEES ESTABLISH AN INTERIM PROBABLE, IMMINENT, AND IRREPARABLE INJURY ............................................................ 49

III. THE TRIAL COURT PROPERLY ENJOINED THE ATTORNEY GENERAL FROM ENFORCING AND IMPLEMENTING THE CHALLENGED RULES REGARDLESS OF A PROSECUTING ATTORNEY'S PARTY STATUS ................................... 53

CONCLUSION AND PRAYER FOR RELIEF ...................................................... 55

CERTIFICATE OF SERVICE ........................................................................... 56

CERTIFICATE OF COMPLIANCE ................................................................... 57

PAGE(S)

**CASES**

*Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions,*
    610 S.W.3d 911 (Tex. 2020)............................................................... 13

*In re Abbott,*
    645 S.W.3d 276 (Tex. 2022) ............................................................. 54

*Acker v. Tex. Water Comm'n,*
    790 S.W.2d 299 (Tex. 1990) ............................................................. 28

*Agey v. Am. Lib. Pipe Line Co.,*
    172 S.W.2d 972 (Tex. 1943)............................................................. 47

*Brazos Elec. Power Coop. v. Pub. Util. Comm'n.,*
    101 S.W.3d 499 (Tex. App.—Austin 2002, pet. denied) ..................... 16

*In re Bell,*
    91 S.W.3d 784 ................................................................................. 16

*Chambers Liberty Ctys. Navigation Dist. v. State,*
    575 S.W.3d 339 (Tex. 2019)....................................................... 12, 13

*Charles Scribner's Sons v. Marrs,*
    262 S.W. 722 (Tex. 1924)................................................................. 47

*Edgewood Indep. Sch. Dist. v. Meno,*
    917 S.W.2d 717 (Tex. 1995)............................................................. 20

*City of El Paso v. Heinrich,*
    284 S.W.3d 366 (Tex. 2009)............................................................. 14

*Fin. Comm'n of Tex. v. Norwood,*
    418 S.W.3d 566 (Tex. 2014)............................................................. 47

*Henry v. Cox,*
    520 S.W.3d 28 (Tex. 2017)............................................................... 13

*Holmes v. Eckels,*
731 S.W.2d 101 (Tex. App.—Houston [1st Dist.] 1987,
writ ref'd n.r.e.) .................................................................... 23

*Humble Oil & Refining Co. v. R.R. Comm'n of Tex.,*
128 S.W.2d 9 (1939) ................................................................ 20

*Garcia v. Laughlin,*
285 S.W.2d 191 (Tex. 1955)...................................................... 42

*Kappus v. Kappus,*
284 S.W.3d 831 (Tex. 2009)...................................................... 18

*Lytle v. Halff,*
12 S.W. 610 (1889) .................................................................. 42

*Meshell v. State,*
739 S.W.2d 246, 254 (Tex. Crim. App. 1987).............................. 48

*Messameno v. Statewide Grievance Committee,*
663 A.2d 317 (Conn. 1995) ...................................................... 46

*Morath v. Tex. State Tchrs. Ass'n,*
No. 03-23-00279-CV, — S.W.3d —, 2025 WL 1449591
(Tex. App.—Austin May 21, 2025, pet. filed) ............................ 41

*Newsom v. State,*
922 S.W.2d 274, 278 (Tex. App—Austin 1996, writ denied) ............ 26

*Orix Capital Markets, LLC v. American Realty Trust, Inc.,*
356 S.W.3d 748 (Tex. App.—Dallas 2011, pet. denied) .................... 25

*Patel v. Tex. Dep't of Licensing & Regul.,*
469 S.W.3d 69 (Tex. 2015)........................................................ 22

*Ex parte Perry,*
483 S.W.3d 884 (Tex. Crim. App. 2016)..................................... 48

*Phillips v. McNeill,*
635 S.W.3d 620 (Tex. 2021)...................................................... 15

*Pub. Util. Comm'n. of Tex. v. City Pub. Serv. Bd. of San Antonio*,
53 S.W.3d 310, 315 (Tex. 2001 ...................................................... 21

*Pub. Util. Comm'n of Tex. v. Cofer*,
754 S.W.2d 121 (Tex. 1988)........................................................... 29

*Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*,
691 S.W.3d 448 (Tex. 2024)..................................................... 13, 21

*Rochelle v. Lane*,
148 S.W. 558 (1912)....................................................................... 50

*City of Rockwall v. Hughes*,
246 S.W.3d 621 (Tex. 2008)........................................................... 18

*Saldano v. State*,
70 S.W.3d 873 (Tex. Crim. App. 2002)........................................... 38

*Sexton v. Mt. Olivet Cemetery Ass'n*,
720 S.W.2d 129 (Tex. App.—Austin 1986, writ ref'd n.r.e.) ............. 21

*Shepperd v. Alaniz*,
303 S.W.2d 846 (Tex. Civ. App.—San Antonio 1957, no pet.)........... 51

*State v. Hollins*,
620 S.W.3d 400, 410 (Tex. 2020) (per curiam). ..........................*passim*

*State v. City of San Marcos*,
714 S.W.3d 224 (Tex. App.—15th Dist. 2025, pet. filed) .................. 50

*State v. Loe*,
692 S.W.3d 215 (Tex. 2024)........................................................... 12

*In re State*,
711 S.W.3d 641 (Tex. 2024)........................................................... 15

*In re State ex rel. Best*,
616 S.W.3d 594 (Tex. Crim. App. 2021)......................................... 49

*State ex rel. Edwards v. Reyna,*
  333 S.W.2d 832 (Tex. 1960)...................................................... 24, 26

*State ex rel. Dishman v. Gary,*
  359 S.W.2d 456 (Tex. 1962)........................................................ 23

*State ex rel. Eidson v. Edwards,*
  793 S.W.2d 1 (Tex. Crim. App. 1990)........................................ 25

*State ex rel. Hickman v. Alcorn,*
  14 S.W. 663 (Tex. 1890)............................................................. 25

*State ex rel. Hill v. Pirtle,*
  887 S.W.2d 921, 927 (Tex. Crim. App. 1994)..................................... 48

*State v. S. Pac. R. Co.,*
  24 Tex. 80 (1859)........................................................................ 47

*Stephens v. State,*
  663 S.W.3d 45 (Tex. Crim. App. 2021), *reh'g denied,*
  664 S.W.3d 293 (Tex. Crim. App. 2022)...................................... 29, 43

*Stern v. State ex rel. Ansel,*
  869 S.W.2d 614(Tex. App.—Houston [14th Dist.] 1994,
  writ denied) ................................................................................. 25

*Ex parte Taylor,*
  36 S.W.3d 883 (Tex. Crim. App. 2001) (per curiam).......................... 38

*Terrell v. Greene,*
  31 S.W. 631 (Tex. 1895)............................................................. 27

*Tex. Educ. Agency v. Houston Indep. Sch. Dist.,*
  660 S.W.3d 108 (Tex. 2023)...................................................... 12, 14

*Tex. Dep't of Transp. v. Sefzik,*
  355 S.W.3d 618(Tex. 2011) (per curiam)14 ...................................... 12

*Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med.*
  *Ass'n*, 511 S.W.3d 28 (Tex. 2017) ...................................................... 21

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n,*
    616 S.W.3d 558, 571 (Tex. 2021)................................................*passim*

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ........................................................... 53, 54

*In re Turner,*
    627 S.W.3d 654 (Tex. 2021) ........................................................ 26

*Walton v. City of Midland,*
    287 S.W.3d 97 (Tex. App.—Eastland 2009, pet. denied).................... 26

*Webster v. Comm'n for Law. Discipline,*
    704 S.W.3d 478 (Tex. 2024).........................................................*passim*

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
    481 U.S. 787 (1987)................................................................ 49

CONSTITUTIONS

CONN. CONST. art. IV, § 27 ...................................................................... 46

TEX. CONST. art. 2, 1 ............................................................................. 42

TEX. CONST. art. 4, § 22 ......................................................................... 27

TEX. CONST. art. 5, § 21 ................................................................... 23, 27

TEX. CONST. of 1845 art. 5, § 9 ............................................................... 31

TEX. CONST. of 1869 art. 4, § 23 ............................................................. 37

TEX. CONST. of 1876 art. 4, § 9 ............................................................... 33

TEX. CONST. of 1876 art. 4, § 22 ............................................................. 37

TEX. CONST. of 1876 art. 5, § 3 ............................................................... 34

TEX. CONST. of 1876 art. 5, § 1 ............................................................... 37

TEX. CONST. of 1876 art. 5, § 3 ................................................... 38

TEX. CONST. OF 1876 art. 5, § 6 ................................................... 37

TEX. CONST. of 1876 art. 5, § 26 ................................................. 38

**STATUTES**

5 U.S.C. § 706(2)(c)(2) .............................................................. 54

Act approved Mar. 19, 1846, 1st Leg., R.S., § 7, 1846 Tex. Gen. Laws 10, 11, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1316, 1317 (Austin, Gammel Book Co. 1898) ................................... 31

Act approved May 11, 1846, 1st Leg., R.S., § 3, 1846 Tex. Gen. Laws 206, 206, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1512 (Austin, Gammel Book Co. 1898) ...................................... 31, 32

Act approved May 13, 1846, 1st Leg., R.S., § 2, 1846 Tex. Gen. Laws 295, 296, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1601–02 (Austin, Gammel Book Co. 1898) ...................................... 31

Act approved Mar. 15, 1875, 14th Leg., 2d R.S., ch. 112, § 1, 1875 Tex. Gen. Laws 179, 179–80, *reprinted in* H.P.N. GAMMEL, 8 The Laws of Texas 1822–1897, at 551–52 (Austin, Gammel Book Co. 1898) ........ 39

Act of Mar. 28, 1885, 19th Leg. R.S., ch. 64, § 1, 1885 Tex. Gen. Laws 61, 61 ....................................................... 18, 35

Act of Aug. 29, 1911, 32nd Leg., 1st C.S., ch. 3, 1911 Tex. Gen. Laws 2, 17–18 ....................................................... 39

Act of Mar. 30, 1923, 38th Leg., R.S., ch. 156, § 4, 1923 Tex. Gen. Laws 335, 335 ....................................................... 40

Act of May 18, 1931, 42nd Leg., R.S. 1931, ch. 139, § 1, 1931 Tex. Gen. Laws 234, 234 ....................................................... 40

Act of May 17, 1985, 69th Leg., R.S. ch. 480, 1985 Tex. Gen. Laws 1720, 1720 ..................................................... 35

Act of Apr. 30, 1987, 70th Leg., R.S., ch. 147, § 1,
    1987 Tex. Gen. Laws 316, 321–24 .............................................. 17, 35

Act of Aug. 9, 1991, 72d Leg., 1st C.S., ch. 4, § 5.01,
    1991 Tex. Gen. Laws 1st C.S. 98, 104 ............................................. 17

Act of May 20, 2003, 78th Legis., R.S., ch. 691, §1,
    2003 Tex. Gen. Laws 620, 620 .......................................... 18, 35, 36

Act of Jun. 2, 2003, 78th Leg., R.S., ch. 198, § 2.139,
    2003 Tex. Gen. Laws 611, 705 ........................................................ 18

Act of May 26, 2011, 82d Leg., R.S., ch. 1257, § 1,
    2011 Tex. Gen. Laws 3378, 3378 ................................................... 17

Act of May 21, 2019,
    86th Leg., R.S., ch. 469, § 1.04, 2019 Tex. Gen. 1076, 1078 ............. 53

Act of May 28, 2023, 88th Legis., R.S., ch. 366, §1,
    2023 Tex. Gen. Laws 800, 800 ...................................................... 24

Act of May 26, 2025, 89th Leg., R.S., Ch. 364, § 2 (H.B. 45),
    2025 Tex. Gen. Laws. ____, ____ ................................................... 29

TEX. CIV. PRAC. & REM. CODE:
    § 37.001–.004 ............................................................................... 13
    § 37.006 ........................................................................................ 13
    § 37.010 ........................................................................................ 13
    § 66.001(2) .................................................................................... 25
    § 66.003(1) .................................................................................... 26

TEX. CODE CRIM. PROC.
    art. 2A.205.................................................................................... 48
    art. 17.32 ....................................................................................... 5
    art. 17.50 ....................................................................................... 5
    art. 20A.204.................................................................................. 53
    art. 38.43 ..................................................................................... 49
    art. 29 (1879)......................................................................... 18, 33
    art. 30 (1879)......................................................................... 33, 34

art. 40 (1879) ............................................ 33, 37

art. 58 (1879) ................................................ 33

§ 3, art. 1 (1925) ............................................. 35

TEX. GOV'T CODE

§ 41.006 ................................................*passim*

§ 41.009 ..................................................... 26

§ 402.02012 ................................................. 17

§ 402.003 ............................................ 17, 18, 35, 36

§ 402.035 ................................................... 17

§ 402.0351 ................................................. 17

§ 402.036 ................................................... 17

§ 420.005 ................................................... 19

§ 420.011 ................................................... 19

§ 420.108 ................................................... 19

§ 552.231 ................................................... 19

§ 552.262 ................................................... 19

§ 552.3031 ................................................. 19

§ 1202.004 ................................................. 19

§ 2001.033(a)(2) ............................................ 3, 47

§ 2001.035(b) ................................................ 3

§ 2001.038(a) .............................................. 13, 33

§ 2101.038(f) ............................................... 19

§ 2107.002 ................................................. 19

TEX. LOC. GOV'T CODE:

§ 87.011 ................................................... 21

§ 87.013 ................................................... 24

§ 87.015 ................................................... 21

§ 87.018(d) ............................................... 22, 23

§ 87.018(e) ................................................. 23

§ 87.018(f) ................................................. 23

TEX. REV. CIV. CODE

tit. 69, ch. 2, art. 2758 (1879) ............................. 33

tit. 69, ch. 3, art. 2771 (1879) ............................. 33

tit. final, § 2 (1925) ...................................... 33

**LEGISLATIVE MATERIALS**

House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 2676,
  78th Leg., R.S. (2003) ....................................................................... 18

Fiscal Note, S.B. 1228, 69th Leg. (1985) ............................................... 35

S.J.R. 16, 22nd Leg., R.S., 1891 Tex. Gen. Laws 197, 198, *reprinted in*
  H.P.N. GAMMEL, 10 The Laws of Texas 1822–1897, at 199–200
  (Austin, Gammel Book Co. 1898)...................................................... 39

S.J.R. 34, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114.................. 39

**RULES**

TEX. R. APP. P.:
  9.4(i)(1) ........................................................................................ 57
  9.5(b)(1) ....................................................................................... 56
Tex. R. App. P. 29.3 ..................................................................*passim*
Tex. R. App. P. 34(b)(1) ................................................................. xvii
Tex. R. App. P. 34(c)(1).................................................................. xvii
Tex. R. App. P. 38.2(a)(1)(C) ......................................................... xvii
Tex. R. App. P. 38.2(a)(1)(B) ............................................................. 3

**OTHER AUTHORITIES**

50 TEX. REG.
  2173 (2025) ............................................................................*passim*

## RECORD REFERENCES

"CR" refers to the Clerk's Record as Appellants originally requested. "RR" refers to the Reporter's Record.

On July 2, 2025, Appellants submitted a sufficient Amended Designation of Request for Clerk's Record with the trial court. *See* TEX. R. APP. P. 34(b)(1) & TEX. R. APP. P. 34(c)(1). The Clerk of the Court recommended to treat these materials under under TEX. R. APP. P. 38.2(a)(1)(C). Accordingly, Appellants' amended record designation and the two trial court filings are appended to District Attorney Middleton's Corrected Appellee Response Brief as a Supplemental Appendix ("Supp. App."). If requested, District Attorney Middleton will file a supplemented brief once the Court receives the supplemental clerk's record.

## STATEMENT OF THE CASE

*Nature of the*
*Underlying Action*

On March 13, 2025, the Office of Attorney filed the "District and County Attorney Reporting Requirements," as adopted, with the Secretary of State. 50 TEX. REG. 2173–2182 (Mar. 28, 2025). The Williamson/Fort Bend District Attorneys filed their Original Verified Petition for declaratory and injunctive relief to prevent the Attorney General from enforcing and implementing the Challenged Rules on May 16, 2025. [CR 280-324]. The district attorneys (and county attorneys with criminal jurisdiction) for Travis and El Paso Counties filed a similar action, [CR 4-50], as did the prosecuting attorneys for Dallas, Bexar, and Harris Counties. [CR 123-278]. All sought relief due to the Attorney General's lack of authority to promulgate the Challenged Rules, the Challenged Rules' violations of the Separation of Powers Clause, the Attorney General's failures to comply with the rulemaking process, and the Challenged Rules' conflicts with federal and state nondisclosure laws.

*Course of proceedings*:

The parties agreed to consolidate the three matters to serve judicial efficiency. [CR 339-40]. On June 16, 2025, the trial court conducted an all-day evidentiary hearing. [2 RR 11-208]. The trial court admitted Appellees' 23 exhibits, including nine witness declarations, and Appellants' five exhibits. [2 RR 15-17]. Appellees presented two witnesses live, [2 RR 35-160], with the additional seven declarants present, including the Williamson and Fort Bend district attorneys themselves. [2 RR 14:14-16]. Appellants' counsel declined to cross-examine any of seven noting similarity in testimony, [2 RR 162:1-2], and did not present any witness testimony. [2 RR 162: 17-19].

*Trial Court*:

459th Judicial District Court, Travis County
The Honorable Catherine Mauzy, presiding

*Trial Court's*
*Disposition*

The trial court granted Appellees' applications for a temporary injunction filed in in Cause No. D-1-GN-25-003445, Cause No. D-1-GN-25-003531, and Cause No. D-1-GN-25-003581 [CR 391-95.]

## STATEMENT REGARDING ORAL ARGUMENT

On July 17, 2025, the Court set this matter for oral argument to occur on September 24, 2025.

Oral argument will assist the Court with the complicated statutory history and constitutional issues raised by this matter. Here, the Attorney General asserts a portion of statutory scheme dating back to the First Legislature as the statutory justification for the Challenged Rules . Relevant constitutional and statutory changes since are numerous.

Further, as this Court is aware, historic statutes predating the creation of the subject-matter codes are cumbersome. The digitized copies available via the Texas State Law Library are thousands of pages in length. Discussion will help synthesize and clarify the historical lineage.

The Court will only benefit from questioning counsel; thus, the Court should increase the time allotted to each side from 20 minute to 30 minutes.

## ISSUE PRESENTED

Did the trial court properly enjoin Appellants from enforcement and implementation pending a final trial on the merits of Chapter 56 of Title I of the Texas Administrative Code when:

- Appellants' statutory justification for promulgating Chapter 56 does not provide Appellants with rulemaking authority?

- The Legislature long ago repealed the Attorney General's authority to request limited and specific information from the prosecuting attorney as well as the reasons for providing such authority in the first place?

- Chapter 56 interferes with the county and district attorneys' core constitutional powers?

- The temporary injunction maintains he status quo, and Appellants did not present any evidence of a concrete harm to counter Appellees' irreparable loss of financial resources and diversion of personnel time?

**INTRODUCTION**

Despite lacking rulemaking authority and contrary to recent authoritative rulings by the state's highest courts recognizing that the Texas Constitution vests independent judgment and discretion onto officers exercising exclusive constitutional authority, Defendants-Appellants Ken Paxton, sued in his official capacity as Texas Attorney General and the Office of Attorney General of the State of Texas (collectively, "Attorney General" or "Appellants") promulgated the "District and County Attorney Reporting Requirements" in Chapter 56 to Title 1 of the Texas Administrative Code ("TAC"). 50 TEX. REG. 2173–2182 (Mar. 28, 2025) (hereinafter, the "Challenged Rules" or "Rules").

The Challenged Rules' purpose and effect are to control and supervise duties the Constitution assigns to the local prosecutors in thirteen Texas counties.[1]

The statutory provision that the Attorney General asserts authorize or require the Rules does not provide the Attorney General with rulemaking authority. The provision dates back to a statutory

---

[1] The counties are those with a population of at least 400,000 according to the 2020 census, which include Harris, Dallas, Tarrant, Bexar, Travis, Collin, Denton, Fort Bend, Hidalgo, El Paso, Montgomery, Williamson, and Cameron counties. Brazoria and Bell counties, with populations slightly less than 400,000, will likely meet the 400,000-person threshold by the time of the next decennial census.

1

scheme that was adopted more than 100 years ago, which required the Attorney General to gather limited data to make a statistical report on the number of indictments, convictions, fines received, *etc.*—not the detailed, intrusive information the Challenged Rules purport to authorize and certainly not for determining if other constitutional officers are appropriately performing their duties. The Legislature has reassigned the reporting obligation to the Office of Court Administration and repealed both the statute requiring the Attorney General to prepare a report and his authorization to require district and county attorneys to provide him with the necessary information.

There is no doubt that the Challenged Rules' purpose and effect are to control and supervise duties the Constitution assigns to local prosecutors. The Attorney General expressly justifies the Rules as "*ensur[ing] that county and district attorneys are consistently complying with statutory duties, including seeking justice for citizens who have been harmed by a criminal act, appropriately administering funds, and appropriately prosecuting crimes.*" 50 TEX. REG. at 2173. The Challenged Rules even create an Oversight Advisory Committee in the Office of the Attorney General with the stated purpose of questioning county and

district attorneys' determinations of probable cause to prosecute. 1 TAC §§ 56.3(a)(6) & 56.9.

But the Constitution exclusively vests those duties in locally elected prosecutors who are officers of the judicial branch, not in the Attorney General, who is an executive officer. The Challenged Rules violate the Separation of Powers Clause by seeking to expand the Attorney General's authority to matters assigned to the judicial branch.

## STATEMENT OF FACTS[2]

### A. The Challenged Rules.

Appellants accurately state the procedural aspects of the rulemaking process. Appellants' sole statutory justification, *see* TEX. GOV'T CODE § 2001.033(a)(2), both in the order adopting the Rules, 50 TEX. REG. at 2173, and asserted in the litigation, is § 41.006 of the Government Code. Section 41.006 , which is titled for the judicial branch and subtitled for prosecuting attorneys, provides:

> At the times and in the form that the attorney general directs, the district and county attorneys shall report to the attorney general the information from their districts and counties that the attorney general desires relating to criminal matters and the interests of the state.

TEX. GOV'T CODE § 41.006.

---

[2] When an appellee "is dissatisfied" with the appellant's "statement of acts," an appellee may include its own. TEX. R. APP. P. 38.2(a)(1)(B).

3

The Challenged Rules require prosecuting attorneys (in counties with a population of 400,000 or more) 1 TAC § 56.3(b), "in a manner prescribed by the [Office of Attorney General]." 1 TAC § 56.1. The Rules require the prosecuting attorneys to submit "an initial, and quarterly and annual reports." 1 TAC § 56.1. The initial report requires submission of "reporting event[s]" between January 1, 2021, and the April 2, 2025 effective date. 1 TAC § 56.(3)(b).

- any correspondence[3] describing or containing an analysis of a district or county attorney's "policy not to indict a category or sub-category of criminal offenses," 1 TAC § 56.3(a)(9);
- any "correspondence with any employee of a federal agency regarding a decision whether to indict an individual," 1 TAC § 56.3(a)(10);
- any "correspondence with any non-profit organization regarding a decision whether to indict an individual," 1 TAC § 56.3(a)(11); and
- any correspondence by an assistant prosecutor regarding "that attorney's resignation under a formal or informal complaint process," 1 TAC § 56.3(a)(12).

Notwithstanding that the judge hearing a state habeas petition may only appoint "some qualified practicing attorney to represent the State" when "neither the county nor the district attorney be present,"

---

[3] The Challenged Rules define "correspondence" to include "any email, letter, memorandum, instant message, text message, or direct message, received or issued by an employee of the reporting entity," but not including "a reporting entity employee's correspondence that is purely personal in nature and has no connection with the transaction of official business." 1 TAC § 56.2(2).

4

TEX. CODE CRIM. PROC. art. 11.39, a "reporting event" also includes the entire case file[4] for instances where a district or county attorney recommends that a convicted defendant be released, resentenced to a lesser sentence, or granted a new trial based on admitted error, 1 TAC § 56.3(a)(4), as well as the entire case file for instances where the Attorney General's "Oversight Advisory Committee"[5] concludes that a district or county attorney lacked probable cause to pursue a prosecution. 1 TAC § 56.3(a)(6).

Despite the Legislature having defined what constitutes a "violent crime" with precision, *see* TEX. CODE CRIM. PROC. art. 17.32 & 17.50, Appellants admit that the Challenged Rules use an use a more expansive expanded definition. 50 TEX. REG. at 2173.[6] The Challenged Rules require reporting "the number of instances in which any law enforcement agency made an arrest under the expanded definition of 'violent crime' but no

---

[4] The Challenged Rules define "case file" to include "all documents, notes, memoranda, and correspondence, in any format such as handwritten, typed, electronic, or otherwise, including drafts and final copies, that were produced within or received by the reporting entity's office, including work product and otherwise privileged and confidential matters." 1 TAC § 56.2(1).

[5] Section 56.9 creates "Oversight Advisory Committee composed of three members of the Office of the Attorney General designated by the Attorney General." 1 TAC § 56.9(a).

[6] "[T]he definition of 'violent crime' in § 56.2(7) is only applicable to the reporting requirements in the rule. The rule does not purport to amend the definition of 'violent crime' in any other context." 50 TEX. REG. at 2173.

indictment was issued, the case was resolved by deferred prosecution or a similar program, or all charges were dropped," 1 TAC § 56.3(a)(7). Because the Oversight Advisory Committee may then request "[a]ll correspondence . . . for a matter listed in response to [that] paragraph of this subsection on a prior quarterly report," 1 TAC § 56.3(a)(8), the Challenged Rules allow the Oversight Advisory Committee to request correspondence even though the prosecuting attorneys only have to report a number. Regardless, the Oversight Advisory Committee may request an entire case file for any matter it desires a case-by-case basis. 1 TAC § 56.9(c).

## B. Procedural History.

On May 16, 2025, Brian M. Middleton, in his official capacity as the District Attorney for the 268th Judicial District of Texas (Fort Bend County) joined by Shawn W. Dick, in his official capacity as the District Attorney for the 26th Judicial District of Texas (Williamson County), (collectively, "Williamson/Fort Bend District Attorneys") filed their Original Verified Petition and Request for Temporary and Permanent Injunction against Appellants. [CR 280-324]. Seeking declaratory and injunctive relief, the Williamson/Fort Bend District Attorneys asserted four causes of action: (1) the Attorney General lacked the rulemaking

6

authority necessary to adopt the Challenged Rules; (2) the Rules violate the Texas Constitution's Separation of Powers Clause; (3) the Rules are inconsistent with and violative of various state and federal laws providing for confidentiality; and (4) the Rules' adoption was an *ultra vires* act of the Attorney General.

Also on May 16,[7] the district attorneys (and county attorneys with criminal jurisdiction) for Travis and El Paso counties—joined by the counties themselves—filed a similar action, [CR 4-50] (Cause No. D-1-GN-25-003445 ("Travis/El Paso Appellees"), along with an extremely thorough brief in support of their temporary injunction application. [CR 57-111]. So did the criminal district attorneys for Dallas and Bexar counties and the district attorney for Harris County—also joined by the counties themselves. [CR 123-174]. Cause No. D-1-GN-25-003531 ("Dallas/Bexar/Harris Appellees"). Their petition incorporated 14 exhibits, including some of the foundational documents cited in this brief. [CR 181-278].[8]

---

[7] Because one may bring an action contesting an administrative rule's compliance with procedural requirements until "the second anniversary of the effective date of the rule," GOV'T CODE § 2001.035(b), Appellees' petitions filed six weeks after the Challenged Rules' effective date were timely.

[8] The other Appellees' response brief certainly contains excellent argument for which there is widespread agreement. Nevertheless, a prosecuting attorney's exclusive constitutional authority deserves defense from counsel unencumbered with

Given the commonality of the issues raised and to serve judicial efficiency, the parties agreed to consolidate the three matters. [CR 339-40]. District Attorneys Shawn Dick, [Supp. App. 31-40], and Brian Middleton, [Supp. App. 20-30], filed declarations supporting the preliminary injunction application.[9] Such added to the seven declarations already filed by other Appellees:

| Declarant | Prosecuting Attorney's Office | Clerk's Record Cite |
|---|---|---|
| Danny W. Smith, Jr. | Travis County Attorney's Office | CR 90-95 |
| Holly Taylor | Travis District Attorney's Office (53 d Judicial District) | CR 96-101 |
| Alma Trejo | El Paso County Attorney's Office | CR 102-106 |
| Amy Lechuga | El Paso District Attorney's Office (34th Judicial District) | CR 107-111 |
| Masha Edwards | Dallas Criminal District Attorney's Office | CR 254-261 |
| Jamissa Jarmon | Bexar Criminal District Attorney's Office | CR 262-269 |
| Joshua Reiss | Harris District Attorney's Office | CR 270-278 |

representation of their respective counties. President Reagan's truism certainly applies: "The person who agrees with you 80% of the time is a friend and ally, not a 20% enemy."

[9] The Williamson/Fort Bend District Attorneys' also filed supplemental argument in support of their temporary injunction application on June 13. [Supp. App. 7–13]. Prior the hearing, the Williamson/Fort Bend District Attorney's filed a reply to Appellants' response to the temporary injunction application. [Supp. App. 42–50].

Because Appellants' trial counsel stipulated the admission of the nine declarations "if the declarant is available at the hearing for purposes of cross-examination," [CR 385], all nine declarants attended the trial court's all-day evidentiary hearing on June 16, 2025. [2 RR 11-208].

After the trial court admitted the nine declarations, Appellees' other 14 exhibits, and Appellants' five exhibits, [2 RR 15-17], the trial court heard testimony from Mr. Smith and Ms. Jamisson. [2 RR 35-160]. The other Appellees' response brief graciously and ably summarizes the nine declarations and the two live witnesses' testimony. [Other Appellees' Br. at 14–18]. To avoid unnecessary repetition where legal issues are central, Appellee District Attorney Middleton incorporates by reference the evidentiary references in the Other Appellees' Brief.

Noting the similarity between the other seven witnesses' declarations and Mr. Smith's and Ms. Jamisson's testimony, Appellants' counsel declined to cross-examine the other seven declarants. [2 RR 162:1-2]. Asserting "the vast majority of this case is a question of law, not necessarily of fact," [2 RR 162:7-8], Appellants did not present any witness testimony or add to their five judicially noticeable exhibits. [2 RR 162: 17-19].

9

The trial court concluded the hearing by stating that it would grant the temporary injunction applications and ordered the parties to confer regarding a date for the merits hearing. [2 RR 205:24–206:4]. On June 20, 2025, the trial court issued its order granting Appellees' temporary injunction applications.

Appellants timely filed their notice of appeal. [CR 399-401].

## SUMMARY OF THE ARGUMENT

The Challenged Rules' admitted purpose is to supervise prosecuting attorneys. The Attorney General's source of statutory authority is in the wrong section and was written in the wrong era to provide the Attorney General any rulemaking authority let alone the unprecedented power the Attorney General contends the statutory provision grants him.

Because the statute lacks any indicia that the Legislature intended to provide the Attorney General rulemaking authority, the Attorney General cannot provide—and Appellees cannot find—an example of a court concluding an agency has rulemaking authority from a source so scant. The Attorney General's contrary conclusion relies on isolated words out of context. Application of all three factors of the Supreme Court's required inquiry demonstrates its invalidity.

10

That the Challenged Rules conflict with numerous other legislative provisions further demonstrates the Attorney General's mistake in relying on an isolated statutory provision. That the statutory provisions in conflict emanate from the common law all the way up to June further shows the Challenged Rules' lack of legitimacy. Examining the statutory structure leads to further questions and fundamental contradictions. That the Legislature provided the Attorney General a sweeping power—unknown and unclaimed by any other Attorney General—three years after the Constitution's ratification is also unprecedented.

Rather, and properly understood in its context, the relevant provision was part of a modest good-government program whose purpose was to check authority rather than to constitute an unconstrained source.

Not only is this the more legitimate answer, it is the answer that avoids a constitutional question that is also without precedent. If an 1879 provision had provided the Attorney General such authority while making his assistant a gubernatorial appointment, it is doubtful such would have first come to light in 2024. More importantly, if the 1879 Legislature was so disposed to undue the 1876 Constitution's balance, it is doubtful that the writings of the era and the history books would contain no mention.

That Appellees demonstrated interim, probable imminent and irreparable injury is not in dispute. The Attorney General asserts additional sovereign injury arguments. An injury under the Separation of Powers Clause is a legal rather than a factual inquiry. And even if that was not the case, the Attorney General did not contest the evidence provided by the prosecuting attorneys.

The Challenged Rules' invalidity means the trial court properly enjoined Appellants' actions respecting the Challenged Rules. Rule 29.3's express limitation to the parties does not constrain the Court now.

### STANDARD OF REVIEW

"Th[is] Court reviews an order granting a temporary injunction for an abuse of discretion." *State v. Loe*, 692 S.W.3d 215, 226 (Tex. 2024). Some evidence reasonably supporting the trial court's factual findings is sufficient. *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017). However, because a "trial court has no discretion to misapply the law [this Court] review[s] its legal determinations de novo." *Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d 108, 116 (Tex. 2023). Interpretation of the Challenged Rules and the relevant statutes, involving questions of law, are reviewed de novo. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 568 (Tex. 2021).

12

## ARGUMENT

It is certainly true that an applicant seeking a temporary injunction must plead and prove (1) a cause of action against the defendant,[10] (2) a probable right to the relief sought,[11] and (3) a probable imminent, and irreparable injury in the interim. *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 914 (Tex. 2020). "When the claim is that an agency rule exceeds the scope of statutory law, the judiciary's role is purely textual," *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 464 (Tex. 2024), and "*ultra vires* conduct automatically results in harm to the sovereign as a matter of law." *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (per curiam).

The prosecuting attorneys as well as the Attorney General often file *ultra vires* action to seeking "compliance with statutory or constitutional provisions." *Chambers-Liberty Ctys. Navigation Dist.*, 575 S.W.3d at 348. "[A]n *ultra vires* suit is a tool 'to reassert the control of the state'"

---

[10] Appellees properly assert causes of action for declaratory judgment under GOV'T CODE § 2001.038(a) against the Office of the Attorney General, *ultra vires* against General Paxton, and the UDJA as to both. CIV. PRAC. & REM. CODE § 37.001–.004, .006 & .010.

[11] "[R]esolution of the merits remains a separate matter from resolution of [an] interlocutory appeal" even where this Court answers "questions of law that closely resemble the questions that will dictate the ultimate outcome of the litigation." *Chambers Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 355 (Tex. 2019).

13

regardless of whether the allegedly errant official is in Austin or a county seat. *Hollins*, 620 S.W.3d at 410 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). Because the State was neither a petitioner nor a respondent in *Heinrich*,[12] this Court should reject the Attorney General's assertion that the presumption of sovereign injury only attaches when the State is the appealing party. [Appellants' Br. 34–35]. In fact, an independent school district properly brought an *ultra vires* action against the Commissioner of the Texas Education Commission. *Tex. Educ. Agency*, 660 S.W.3d at 110. The Supreme Court expressly granted an outdoor-advertising-permit applicant the opportunity to plead an *ultra vires* action against the agency's executive director. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 & n.2 (Tex. 2011) (per curiam).

The Attorney General asserts that the nonapplicable standard of equitable balancing dispositively weight in the Attorney General's favor because the Challenged Rules have the force of law. But the Attorney General invokes a mandamus decision challenging an appellate court's grant of TEX. R. APP. P. 29.3 motion for temporary relief. [Appellants' Br.

---

[12] In *Heinrich*, the Attorney General appeared for the State as *amicus curiae*. 284 S.W.3d 369 n.2.

14

at 34 (citing *In re State*, 741 S.W.3d 641, 645 (Tex. 2024))]. Because this Court is tasked with determining whether the Challenged Rules "contravene[] the [relevant statutes specific text] or run [] counter to its purpose as a matter of law," *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 571, the Challenged Rules are not a duly enacted law with the same force as a statute. This is particularly true where prosecuting attorneys challenging the usurpation of their authority. That the Attorney General's asserted sufficient remedy to the protect the prosecuting attorney Appellees' vested legal rights is the Challenged Rules providing "*three* different provisions that allow them to request exceptions or extensions" from the Attorney General, [Appellants' Br. at 35 (emphasis in original)], is out of place in "a government of laws, and not of men." *Phillips v. McNeill*, 635 S.W.3d 620, 628 (Tex. 2021).

## I.  APPELLEES ESTABLISH A PROBABLE RIGHT TO RELIEF

The Attorney General lacks any legal authority, express or implied, to promulgate administrative rules to "direct" the conduct of the district and county attorneys. Section 41.006 of the Government Code does not provide Attorney General with rulemaking authority. The Challenges Rules are also invalid as contravened by specific statutes, contrary to the statutory objectives, and disproportionate burdens not related to a

15

legitimate purpose. Interpretation of the Challenges Rules and the relevant statutes, involving questions of law, are reviewed de novo. *Tex. Bd. of Chiropractic Exam'rs*, at 568.

### A. Section 41.006 of the Government Code Does Not Grant the Attorney General Rulemaking Authority.

The existence of the agency's rulemaking authority is wholly dependent upon a valid statutory grant set forth expressly by the Legislature. *See, e.g., Pub. Util. Comm'n. of Tex. v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 315 (Tex. 2001); *Brazos Elec. Power Coop. v. Pub. Util. Comm'n.*, 101 S.W.3d 499, 501 (Tex. App.—Austin 2002, pet. denied); & *Sexton v. Mt. Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex. App.—Austin 1986, writ ref'd n.r.e.). Section 41.006 of the Government Code does not provide the Attorney General any rulemaking authority. As discussed, *infra* II.B, the Legislature required the district attorneys to report information concerning court operations and receipts from fines and forfeitures to the Attorney General, who in turn reported the statewide information to the governor.

Chapter 402 of the Government Code sets out the Attorney General's powers and duties. Chapter 402 does not provide the Attorney General any ***general*** rulemaking authority. Instead, the legislature

16

provided only four specific grants of rulemaking authority in all of Chapter 402:

- TEX. GOV'T CODE § 402.0212 (provision of legal services by outside counsel);
- TEX. GOV'T CODE § 402.035 ("may adopt rules to administer the submission and collection of information" to the human trafficking prevention task force);
- TEX. GOV'T CODE 402.0351 ("by rule shall prescribe the design and content" of the anti-human-trafficking signs the legislature requires certain businesses and entities to post); and
- TEX. GOV'T CODE § 402.036 ("shall establish" rules related to the "Support Adoption" account).

None of the four were a part of the creation of Chapter 402 (and the executive branch portion of the government code).[13] Respecting the entire creation of the Government Code's title for the executive branch, the House Committee on State Affairs concluded the bill "does not delegate rulemaking authority to any state officer, agency, department, or institution."[14] Accordingly, as enacted in 1987, the provision requiring

---

[13] Act of Apr. 30, 1987, 70th Leg., R.S., ch. 147, § 1, 1987 Tex. Gen. Laws 316, 321–24 (codified TEX. GOV'T CODE Ch. 402). Even the provision granting the Attorney General authority to hire outside legal counsel did not appear until 1991. Act of Aug. 9, 1991, 72d Leg., 1st C.S., ch. 4, § 5.01, 1991 Tex. Gen. Laws 1st C.S. 98, 104 (codified TEX. GOV'T CODE § 402.0212). And the legislature did not provide rulemaking authority for that provision until 2011. Act of May 26, 2011, 82d Leg., R.S., ch. 1257, § 1, 2011 Tex. Gen. Laws 3378, 3378 (codified TEX. GOV'T CODE § 402.0212(f)).

[14] Act of Apr. 30, 1987, 1987 Tex. Gen. Laws at 322 (codified TEX. GOV'T CODE § 402.003).

the Attorney General to provide information concerning criminal cases to the governor (§ 402.003) does not provide rulemaking authority.

When the Legislature removed nearly all the Attorney General's criminal reporting requirements (§ 402.003).[15] The House Committee on Judicial Affairs explained that the amendment deleted those requirements because this information "is collected by the Office of Court Administration rather than the Attorney General's office" and stated that *the bill does not grant rulemaking authority*.[16]

The remainder of the Government Code also demonstrates that neither § 41.006 nor § 402.003 provides the Attorney General with rulemaking authority. Because "[e]very word excluded from a statute [is] presumed to have been excluded for a purpose,"[17] the Government Code's other specific grants of rulemaking authority are instructive.

---

[15] *Compare* Act of May 20, 2003, 78th Legis., R.S., ch. 691, §1, 2003 Tex. Gen. Laws 620, 620 (codified TEX. GOV'T CODE § 402.003) *with* Act of Mar. 28, 1885, 19th Leg. R.S., ch. 64, § 1, 1885 Tex. Gen. Laws 61, 61 (amending TEX. CODE CRIM. PROC. art. 29).

[16] House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 2676, 78th Leg., R.S. (2003). The document stated "additional rulemaking authority," but as explained, *infra* ¶ 44, the relevant legislative committee stated the predecessor statute did not provide any rulemaking authority.

[17] *In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002); *see also Kappus v. Kappus*, 284 S.W.3d 831, 835 (Tex. 2009), *City of Rockwall v. Hughes*, 246 S.W.3d 621, 629 (Tex. 2008).

18

Aside from the four set out in Chapter 402 detailed above, there are nine more:

- TEX. GOV'T CODE § 420.005 (administration of grants awarded by the Office of Attorney General related to sexual assault survivors);
- TEX. GOV'T CODE § 420.011 ("Attorney General may adopt rules necessary to implement" sexual assault prevention and crisis services);
- TEX. GOV'T CODE § 420.108 (statewide telehealth center for sexual assault forensic medical examination);
- TEX. GOV'T CODE § 552.231 (public information requests requiring programming or manipulation of data);
- TEX. GOV'T CODE § 552.262 (setting the maximum rate of charges for the copying of public information);
- TEX. GOV'T CODE § 552.3031 (request for Attorney General public information opinion by electronic submission);
- TEX. GOV'T CODE § 1202.004 (Attorney General's examination of public security registrations);
- TEX. GOV'T CODE § 2107.002 (collection of delinquent obligations to the State); and
- TEX. GOV'T CODE § 2260.052 (negotiation of contract claims against the State).

The Legislature has provided the Attorney General express rulemaking authority in at least a dozen other instances outside of the Government Code, including in the Code of Criminal Procedure, the Business and Commerce Code, the Family Code, the Insurance Code, and the Transportation Code.

The scope of an agency's expressly-provided authority is different than the threshold inquiry of whether the Legislature has expressly

19

provided an agency *any* subject-matter authority. Regarding the dispositive threshold inquiry, "[s]uch power must be conferred under statutory or constitutional language that is free from doubt, and that admits of no other reasonable construction." *Humble Oil & Refining Co. v. R.R. Comm'n of Tex.*, 128 S.W.2d 9, 15 (1939). Only if the Legislature has provided an agency authority expressly, then the limits of such authority may be implied. That is the statutory inquiry to which this brief now turns.

**B.    Despite § 41.006's Failure to Set Forth the Power to Adopt Rules or Engage in Rulemaking, the Challenged Rules are Invalid Under the Relevant Texas Statutes.**

Most statutory validity challenges to an adopted rule concern the scope of an agency's rulemaking authority—*i.e.*, whether "the rule's provisions are in harmony with the general objectives of the act involved"—rather than whether the Legislature expressly provided such authority *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995). "Generally then, the objecting party must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant

statutory provisions." *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017).

A statute's objectives are always read "in context—not isolation." *Hollins*, 620 S.W.3d at 407. The Court is simultaneously "give[s] meaning to every word in a statute, harmonizing each provision while considering the context and framework of the entire statute in order to meld its words into a cohesive reflection of legislative intent." *Luminant Energy Co.*, 691 S.W.3d at 460.

### 1. The Challenged Rules Contravene Specific Statutory Language.

#### a. By Allowing the Attorney General to Initiate Legal Action, the Challenged Rules Contravene the Statutory Provisions for the Those Legal Actions.

The Challenged Rules state that violations are "official misconduct" under TEX. LOC. GOV'T CODE § 87.011, 1 TAC § 56.8(1) for which the Attorney General may enforce in Court. 1 TAC § 56.8(3). In response to comments, the Attorney General stated that only a district judge may remove a prosecuting attorney after petitioning the district court under TEX. LOC. GOV'T CODE § 87.015. 50 TEX. REG. at 2175.

The Attorney General does not have the authority to expand the statutory definition of official misconduct, a ground for quo warranto, or

21

create a civil action for the Attorney General to pursue. To the extent the Attorney General purports to create a civil action or expand the statutory definition of official misconduct or ground for quo warranto, such is precluded by statutes and decisional law.[18]

Representation of the State in a Removal Proceeding. The Legislature—not the Attorney General—controls who shall represent the State in removal proceedings for county officials. Prior to June 20 of this year, the county attorney represented the State in removal proceedings under LOC. GOV'T CODE § 87.018(d) unless one of two circumstances presented: (1) the removal petition is against the county attorney who is not a prosecuting attorney in which case the district attorney represents the State; or (2) the removal petition is against the prosecuting attorney in which case the presiding judge of the administrative judicial region

---

[18] The Attorney General asserts the prosecuting attorney Appellees lack standing to challenge the compliance provisions. In a multi-plaintiff case, the Court need only analyze one plaintiff's standing individually. *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015). The Attorney General does not cite any authority for a piecemeal application of standing under GOV'T CODE § 2001.038(a) for which the Supreme Court has repeatedly analyzed standing as to the entirety of the review and criticized deviation from the purely textual reviews. Because review of standing raised for the first time on appeal is lenient, *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 567, a plaintiff's view of imprecise and conflicting answers trumps a defendant's assertion that such is speculative. [*Compare* Appellants' at 23-24 *with* 50 TEX. REG. at 2175], particularly for a constitutional interference concern between officials with exclusive constitutional authority.

22

appoints a prosecuting attorney from another judicial district or county. TEX. LOC. GOV'T CODE §§ 87.018(e) & (f).

In legislation effective immediately upon the Governor's signature, the 89th Legislature expanded the provision by requiring the presiding judge of the administrative judicial region to appoint a prosecuting attorney from another judicial district or county for removal petitions against the prosecuting attorney to all removal proceedings of county officials. The Legislature also repealed sections (d) & (e).[19] Because such has never included the Attorney General, 1 TAC § 56.8(3) cannot provide the Attorney General with authority to represent the State in removal proceedings.[20]

Definition of Official Misconduct. The 88th Legislature defined "official misconduct" by a prosecuting attorney to include "a prosecuting attorney's adoption or enforcement of a policy of refusing to prosecute a

---

[19] *Id*. at ____ (repealing TEX. LOC. GOV'T. CODE § 87.018(d) & (e))).

[20] Historically, the removal proceedings were referred to as ouster proceedings and divided between the county and district attorneys under TEX. CONST. art. 5, § 21 as a civil case. *State ex rel. Dishman v. Gary*, 359 S.W.2d 456, 458 (Tex. 1962). The county or district attorney represented the State "in its sovereign capacity, to protect the interests of the people as a whole and guard the public welfare by ousting incumbents of office who wrongfully hold to the injury of the public." *Id*. The Legislature's division of authority between the district and county attorneys controlled. Officials who usurped authority faced consequences in that action. *Holmes v. Eckels*, 731 S.W.2d 101, 103 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (district attorney sanctioned where statutory authority clearly belonged to the county attorney).

23

class or type of criminal offense under state law or instructing law enforcement to refuse to arrest individuals suspected of committing a class or type of offense,"[21] or permitting an attorney employed or otherwise directly controlled by prosecuting attorney to do the same.[22]

Both courts of last resort have limited removal to statutory grounds. The Court of Criminal Appeals expressly held that a trial court may remove a district attorney only one of the three grounds for removal enumerated in TEX. LOC. GOV'T CODE § 87.013—one of which is "official misconduct." *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 5 (Tex. Crim. App. 1990). The Supreme Court limited the ability to remove an elected officer to specific statutory duty constituting unlawful conduct. *State ex rel. Edwards v. Reyna*, 333 S.W.2d 832, 836 (Tex. 1960). Because official misconduct is and has been defined by statute,[23] 1 TAC § 56.8(1) is contravened by statute.

Ground for a Quo Warranto Proceeding. The Challenged Rules also assert that the Attorney General may bring an action in quo warranto for

---

[21] Act of May 28, 2023, 88th Legis., R.S., ch. 366, §1, 2023 Tex. Gen. Laws 800, 800 (codified TEX. LOC. GOV'T CODE § 87.011(3)(B)).

[22] *Id.* (codified TEX. LOC. GOV'T CODE § 87.011(3)(C)).

[23] In 1890, the Supreme Court held the ouster statute was "penal in character, and must be construed as though it were one defining a crime and prescribing its punishment." *State ex rel. Hickman v. Alcorn*, 14 S.W. 663, 665 (Tex. 1890).

24

forfeiture of office for a violation of Chapter 56. 1 TAC § 56.8(2). Under CIV. PRAC. & REM. CODE § 66.001(2), a ground bringing an action in quo warranto is if "a public officer does an act or allows that by law causes a forfeiture of his office." CIV. PRAC. & REM. CODE § 66.001(2).

The Attorney General asserts that because he does not need any separate authorization to exercise his quo warranto authority, 1 TAC § 56.8(2) cannot violate the nondelegation doctrine. The Fort Bend County District Attorney agrees with the Attorney General to the extent that the ground for quo warranto existed at common law and is allowable under the Constitution. Therein lies the problem with the Attorney General's argument. An action in quo warranto for forfeiture of office is narrow and cannot be used to create grounds—like an administrative rule entered without rulemaking authority—unsupported by the action at common law or permitted under the Constitution.

Quo warranto is an ancient common-law writ that gave the king an action against a person who claimed or usurped any office, franchise, or liberty, to inquire by what authority that person supported the claim to hold office. *Orix Capital Markets, LLC v. American Realty Trust, Inc.*, 356 S.W.3d 748, 752 (Tex. App.—Dallas 2011, pet. denied). "A quo warranto action serves to test whether an individual has the proper authority to

25

hold office, not to test the validity of their actions once in office." *Walton v. City of Midland*, 287 S.W.3d 97, 101 (Tex. App.—Eastland 2009, pet. denied) (citing *Newsom v. State*, 922 S.W.2d 274, 278 (Tex. App—Austin 1996, writ denied)).

Rather, the Attorney General seeks to backdoor the authority he clearly does not have to expand the definition of "official misconduct" and represent the State in ouster proceedings by asserting such authority as a forfeiture of office. Since the Supreme Court held in *Reyna* that the ability to remove an elected officer is limited to a specific statutory duty constituting unlawful conduct, 333 S.W.2d at 836, even an administrative rule enacted with rulemaking authority does not create a new statutory ground for removal. *See* CIV. PRAC. & REM. CODE § 66.003(1) (requiring removal from office).

Certainly, if not reporting information, confidential information about initiating criminal prosecutions to someone who does not have any authority to initiate criminal prosecutions is a forfeiture of office, then so would a public officer entrusted with the safe-keeping of public funds abusing that trust. Section 41.009 of the Government Code provides that authority to the district and county attorneys. As the Supreme Court

26

noted, that statute vests an exclusive power in the district or county attorney. *Terrell v. Greene*, 31 S.W. 631, 633 (Tex. 1895).

What the foregoing discussion reveals is that removal's "official misconduct" and quo warranto's act that causes a forfeiture of office are not synonymous. By using distinct terms, the Legislature has signaled otherwise. Therefore, the plain text of the controlling authority bars the Attorney General from (1) unilaterally defining the failure to comply with the Challenged Rules as "official misconduct" and (2) redefining causing a forfeiture of office to include "official misconduct."

Last, the Attorney General's citation to the Supreme Court's recent quo warranto decision has little relevance because that matter concerned the Attorney General's exclusive constitutional authority over corporations. *Paxton v. Annunciation House, Inc.*, No. 24-0573, — S.W.3d —, 2025 WL 1536224, at *12 (Tex. May 30, 2025) (citing TEX. CONST. art. 4, § 22). Presumably, that limits the Attorney General's ability to determine that sufficient cause exists to exercise his quo warranto authority. Section 56.8(2) of the Challenges Rules is invalid because

27

### b. The Challenged Rules Conflict with the Legislative Provision Providing the Attorney General the Authority to Request Information for Human Trafficking Cases Under Specific Conditions.

"A legislative enactment covering a subject dealt with by an older law, but not repealing that law, should be harmonized whenever possible with its predecessor in such a manner as to give effect to both." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). The Attorney General asserts the Legislature's enactment of § 41.006 "empower[s] the Attorney General to request and receive any information he desires about 'criminal matters' from" prosecuting attorneys—a determination the Legislature supposedly made in 1879—means that § 41.006 "must be read as an exception to those unidentified confidentiality laws." [Appellants' Br. at 18].

The 89th Legislature enacted legislation providing the Attorney the Attorney General with the authority to initiate prosecution where a prosecuting attorney does not take a prosecutorial action within 180 days of receipt of a report stating there is probable cause to believe an offense

28

occurred under Chapter 20A of the Penal Code (Human Trafficking).[24] [Supp. App. 49].

The same provisions provides the Attorney General authority to "submit a request" to a prosecuting attorney and, more importantly compels the prosecuting attorney to "provide all requested information" only where the attorney general is representing the state in that specific human trafficking matter after 180 days of prosecutorial action.[25]

Because that is narrower than the provision in the Challenged Rules allowing the "Oversight Advisory Committee"[26] to request "information that the Oversight Advisory Committee desires relating to criminal matters and the interests of the state on a case-by-case basis," 1 TAC § 56.9(c), the provision of the Challenged Rule conflicts with statute.[27]

---

[24] Act of May 26, 2025, 89th Leg., R.S., Ch. 364, § 2 (H.B. 45), 2025 Tex. Gen. Laws. ____, ____ (to be codified TEX. GOV'T. CODE §§ 402.101, 102(a), 103(a)). The Fort Bend District Attorney believe this statute is unconstitutional under *Stephens*.

[25] *Id*. at ____ (to be codified TEX. GOV'T. CODE § 402.102(a)).

[26] Section 56.9 of the Rules creates an "Oversight Advisory Committee composed of three members of the Office of the Attorney General designated by the Attorney General." 1 TAC § 56.9(a). "[S]ince the various assistant attorneys general have no constitutional or statutory authority that is not derived directly from the Attorney General himself," *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 123 (Tex. 1988), the nondelegation doctrine does not permit the creation of the "Oversight Advisory Committee." 1 TAC § 56.9(a) & (b).

[27] It seems like members of the Legislature (and the Governor) do not share the Attorney General's view § 41.006, particularly as this provision will be in Chapter 402. Because such is not contained in the Texas Register, the Attorney General's

### 2. The Relevant Texas Statutes Do Not Permit the Challenged Rules.

Failing to address any other statutory provision, the "generally worded provisions do not provide authority" for the "unprecedented" and "thus said ever to have been considered necessary and indispensable," *Hollins*, 620 S.W.3d at 407, provision of complete criminal case files to the Attorney General. First, § 41.006 was part of the implementation of the Attorney General's obligation to report certain criminal case statistics to the governor, that reporting obligation and the statute authorizing the Attorney General to require the district and county attorneys to give him information necessary to prepare that report no longer exist. Second, the Attorney General's assertion of 1879 as the Legislature's authorization of the Attorney General's entitlement to entire criminal case files is ahistorical. Third, any possible basis for the Attorney General's need beyond for reporting beyond basic statistical and financial information is no longer present.

---

assertion that he promulgated the Rules as a favor to the prosecuting attorneys "to avoid requesting information on an ad hoc basis," [Appellants' Br. 2], is post hoc.

### a. Section 41.006 Originated as Part of a Reporting Requirement No Longer in Effect

<u>The First Legislature's Reporting Requirements</u>. The Statehood Constitution assigned to the Governor the duty to "give to the legislature information in writing of the state of government, and recommend to their consideration such measures as he may deem expedient." TEX. CONST. of 1845 art. 5, § 9. "[O]n the first Monday of each December" and "at other times [the governor] shall [or may] require," the treasurer,[28] the comptroller of public accounts,[29] and the attorney general[30] to report specified information to the governor.

The attorney general reported to the governor (1) "the number of indictments which have been found by grand juries in this State for the preceding year, the offenses charged therein"; (2) "the number of arraignments, convictions and acquittals for each offence, the number of indictments which have been disposed of without the intervention of a

---

[28] Act approved Mar. 19, 1846, 1st Leg., R.S., § 7, 1846 Tex. Gen. Laws 10, 11, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1316, 1317 (Austin, Gammel Book Co. 1898).

[29] Act approved Apr. 11, 1846, 1st Leg., R.S., § 3, 1846 Tex. Gen. Laws 68, 69, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1374, 1375 (Austin, Gammel Book Co. 1898).

[30] Act approved May 11, 1846, 1st Leg., R.S., § 4, 1846 Tex. Gen. Laws 206, 207, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1512, 1513 (Austin, Gammel Book Co. 1898).

31

petit jury, with the cause and manner of such disposition"; and (3) "a summary of the judgments rendered on conviction, specifying the offence, the nature and amount of penalties imposed, and the amount of fines collected."[31] The First Legislature required the Attorney General to obtain from the several district attorneys "all the information necessary for [the Attorney General's] compliance with the requisitions of" that report to the governor,[32] and "precise information of the situation of all suits instituted by them for the collection of public money."[33] The information required by the statute was basic statistical and financial information.

The First Legislature required the several district attorneys to provide to the Attorney General the exact information the attorney general reported to the Governor.[34] Additionally, the district attorneys were to "give to the attorney general such information as he may require as to their official acts."[35]

---

[31] *Id.*

[32] *Id.* at § 5.

[33] *Id.* at § 7.

[34] Act approved May 13, 1846, 1st Leg., R.S., § 4, 1846 Tex. Gen. Laws 295, 296, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1601, 1602 (Austin, Gammel Book Co. 1898).

[35] *Id.* at § 5.

The 1876 Constitution's Continuation of the Gubernatorial Reporting Requirement. The 1876 Constitution expressly required the Governor to "account to the Legislature for all public moneys received [and to] present estimates of the money required to be raised by taxation for all purposes." TEX. CONST. of 1876 art. 4, § 9. The department heads continued to provide annual reports to the governor.[36] The legislature required the attorney general to provide substantially the same statewide information concerning court operations and receipts from fines and forfeitures, TEX. CODE CRIM. PROC. art. 29 (1879), and allowed the attorney general to obtain from the district (and now also county) attorneys all information to complete such report, *id*. at art. 30 (1879).

The Legislature further required the district and county attorneys to report to the attorney general such information as the attorney general "may desire in relation to the criminal matters and the interests of the state." *Id*. at art. 40 (1879). The Legislature also required the county clerks to report to the Attorney General requested materials related to "criminal matters." *Id*. at art. 58 (1879).[37]

---

[36] TEX. REV. CIV. CODE tit. 69, ch. 2, art. 2758 (1879) (comptroller of public accounts) & TEX. REV. CIV. CODE tit. 69, ch. 3, art. 2771 (1879) (treasurer) & TEX. CODE CRIM. PROC. art. 29 (1879) (attorney general).

[37] The first code of criminal procedure required the district clerks provide similar specified information to the attorney general. TEX. CODE CRIM. PROC. art. 944 (1856).

In short, the 1879 Code of Criminal Procedure included three interconnected articles that implemented the attorney general's obligation to prepare a report for the governor. Article 29 directed the attorney general to make the report, article 30 gave him the authority to require district and county attorneys to provide him with the data "necessary for his compliance with the [article requiring him to report to the governor],"[38] and article 40 directed the district and county attorneys to give him the information he requested. Article 40, which is now § 41.006, connected to obtaining the information the attorney general needed so that the attorney general could consolidate it into the statistical report to the governor. The Attorney General could not exceed the express limitation in article 30 and ask for more.

Subsequent Statutory Changes. Over the years, the statutes were codified and recodified, and the reporting requirements changed. In 1925, the Attorney General still had an obligation to make a report to the governor, TEX. REV. CIV. CODE tit. 70, ch. 4, art. 4413 (1925), and the prosecuting attorneys had a duty to assist in the same. TEX. REV. CIV.

_____

[38] "[The attorney general] may require the several district and county attorneys, clerks of the district and county courts in the state, to communicate to him at such times as he may designate, and in such form as he may prescribe, all the information *necessary for his compliance with the requirements of the preceding article.*" TEX. CODE CRIM. PROC. art. 30 (1879) (emphasis added).

34

CODE tit. 15, ch. 3, art. 333 (1925). Article 30 of the Code of Criminal Procedure—the provision authorizing the attorney general to require the district and county attorneys to provide him with information—was repealed with the codifications in that year of both the Code of Criminal Procedure and the Revised Civil Statutes.[39]

In 1985 and 1987, the legislature created the government code (in addition to other subject matter codes) as part of the Texas Legislative Council's nonsubstantive revision of Texas statutes. Section 41.006 is a verbatim copy of article 333 of the 1925 civil statutory compilation[40] that had no fiscal implication anticipated for local government.[41] The Attorney General's reporting requirement to the governor is an almost verbatim copy of article 4311 of the 1925 civil statutory compilation.[42]

In 2003, the legislature removed nearly all the Attorney General's criminal reporting requirements (§ 402.003).[43] The House Committee on

---

[39] TEX. CODE CRIM. PROC. § 3, art. 1 (1925) (repealing all laws relating to criminal procedure not included herein); TEX. REV. CIV. CODE tit. final, § 2 (1925) (repealing all civil statutes not included herein).

[40] Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 1919 (codified TEX. GOV'T CODE § 41.006).

[41] Fiscal Note, S.B. 1228, 69th Leg. (1985).

[42] Act of Apr. 30, 1987, 70th Leg., R.S., ch. 147, § 1, 1987 Tex. Gen. Laws 316, 322 (codified TEX. GOV'T CODE § 402.003).

[43] *Compare* Act of May 20, 2003, 78th Legis., R.S., ch. 691, §1, 2003 Tex. Gen. Laws 620, 620 (codified TEX. GOV'T CODE § 402.003) *with* Act of Mar. 28, 1885, 19th Leg.

Judicial Affairs explained that the amendment deleted those requirements because this information "is collected by the Office of Court Administration rather than the attorney general's office."[44]

All that remained for the Attorney General to report to the Governor were the categories the Legislature added in 1885 to report a summary of the (a) summaries of the cases in which the state was a party at a court of last resort, including the Court of Criminal Appeals, and (b) summaries of the civil cases in which the attorney general's represented the state as a party in state or federal court.[45] The 2003 amendment removed the justification dating back to 1846 for the prosecutors supplying the discrete categories of information compiled for the Attorney General's report to the Governor.

R.S., ch. 64, § 1, 1885 Tex. Gen. Laws 61, 61 (amending TEX. CODE CRIM. PROC. art. 29).

[44] House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 2676, 78th Leg., R.S. (2003). The document stated "additional rulemaking authority," the relevant legislative committee stated the predecessor statute did not provide any rulemaking authority.

[45] Act of May 20, 2003, 2003 Tex. Gen. Laws at 620 (codified TEX. GOV'T CODE § 402.003).

### b. That a Heretofore Unknown Vehicle for the Attorney General to Supervise Prosecuting Attorneys Began in 1879 is Implausible.

The Attorney General attempts to muddy the historic record by asserting that "[s]ince at least since 1879, the Legislature has empowered the Attorney General to obtain reports from district and county attorneys about criminal matters and the interests of the State." [Appellants' Br. at 1 (citing TEX. CODE CRIM. PROC. art. 40 (1879))]. Our present 1876 Constitution made two important changes relevant to this inquiry.

First, the 1876 Constitution repealed the Attorney General's prior authority to "instruct and direct the official action of the District Attorneys so as to secure all fines and forfeitures, all escheated estates, and all public moneys to be collected by suit." TEX. CONST. of 1869 art. 4, § 23.

Second, the 1876 Constitution bifurcated the state's judicial power by vesting it in one Supreme Court and one Court of Appeals. TEX. CONST. of 1876 art. 5, § 1. The 1876 Constitution vested the Attorney General with express authority to "represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party." TEX. CONST. of 1876 art. 4, § 22. While the 1876 Constitution provided the Court of Appeals with appellate jurisdiction over all "in ***all criminal***

37

*cases*, of whatever grade." TEX. CONST. of 1876 art. 5, § 6 (emphasis added), the Framers did not confer on the Attorney General for the Court of Appeals what it did for the Supreme Court.[46] The 1876 Constitution's use of the phrase "all criminal cases, of whatever grade" and lack of express assignment to the Attorney General indicates that the Attorney General was not a player in criminal prosecutions at ratification.

The 1879 Legislature providing the Attorney General unlimited access to criminal case files is belied by the fact that "the framers of our constitution, influenced by the political philosophy of the Jacksonian era and the despotic control of the Reconstruction governor, deliberately chose to decentralize executive authority." *Saldano v. State*, 70 S.W.3d 873, 877 (Tex. Crim. App. 2002) (internal quotation marks omitted).

### c. The Attorney General's Former Authority in Criminal Appeals Does Not Permit the Rules.

The Attorney General "had constitutional authority to represent the State in appeals of criminal cases, and it had statutory authority to do so until 1923." *Ex parte Taylor*, 36 S.W.3d 883, 878 (Tex. Crim. App. 2001) (per curiam).

---

[46] In 1891, a constitutional amendment changed the name of the Court of Appeals to the Court of Criminal Appeals and stripped its civil jurisdiction. 1891 Tex. Gen. Laws at 198, *reprinted in* H.P.N. GAMMEL, 10 The Laws of Texas 1822–1897, at 199–200; TEX. CONST. art. 5, § 5 (amended 1891).

Criminal convictions at ratification (and in 1879) proceeded before a singular appellate court.[47] The intermediate courts of appeals obtained jurisdiction over criminal appeals other than capital in 1981. Even then, the State did not have the right to appeal a criminal matter (except for extraordinary writs).[48]

With one appellate court for criminal matters in Austin, the burden on the district attorneys of defending criminal appeals caused the Legislature created one "Assistant Attorney General" position.[49] Even so, the position required a gubernatorial appointment, with advice and consent of the Senate.[50] The Legislation placed this position in the Judicial Department for budgetary purposes by appropriating the same under the Court of Criminal Appeals.[51]

---

[47] The intermediate court of appeals did not exist until 1891. *See* TEX. S.J.R. 16, 22nd Leg., R.S., 1891 Tex. Gen. Laws 197, 198, *reprinted in* H.P.N. GAMMEL, 10 The Laws of Texas 1822–1897, at 199–200 (Austin, Gammel Book Co. 1898); TEX. CONST. art. 5, § 6 (added 1891).

[48] *Compare* TEX. CONST. OF 1876 art. 5, § 26 *with* TEX. S.J.R. 34, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114; TEX. CONST. art. 5, § 26 (amended 1987).

[49] Act approved Mar. 15, 1875, 14th Leg., 2nd R.S., ch. 122, § 1, 1875 Tex. Gen. Laws 179, 179–80, *reprinted in* H.P.N. GAMMEL, 8 The Laws of Texas 1822–1897, at 551–52 (Austin, Gammel Book Co. 1898).

[50] *Id.*

[51] *See, e.g.*, Act of Aug. 29, 1911, 32nd Leg., 1st C.S., ch. 3, 1911 Tex. Gen. Laws 2, 17–18 (attorney general); 34 (salary of assistant attorney general underneath the Court of Criminal Appeals).

In 1923, the Legislature provided the position of the "attorney for the State before the Court of Criminal Appeals of Texas."[52] The position continued to be subject to gubernatorial appointment with the advice and consent of the Senate.[53] In 1931, the Legislature renamed the position as the "State Prosecuting Attorney."[54] The Legislature provided the Court of Criminal Appeals the authority to appoint the State Prosecuting Attorney.[55]

To whatever extent the Attorney General's former authority in criminal appellate matters created blurred lines between the executive and judicial departments, the Legislature unblurred them by placing the responsibility under the Court of Criminal Appeal, which continues to this day as Chapter 42 of the Government Code.

### 3. The Challenged Rules impose additional burdens inconsistent with the relevant statutory provisions.

Principally, the Challenged Rules well exceed the historic practice of the prosecuting attorneys providing basic statistical and financial

---

[52] Act of Mar. 30, 1923, 38th Leg., R.S., ch. 156, § 4, 1923 Tex. Gen. Laws 335, 335.

[53] Act of May 18, 1931, 42nd Leg., R.S. 1931, ch. 139, § 1, 1931 Tex. Gen. Laws 234, 234.

[54] *Id.*

[55] Act of May 18, 1931, 42nd Leg., R.S. 1931, ch. 139, § 1, 1931 Tex. Gen. Laws 234, 234.

information to the Attorney General for the Attorney General's report to the Governor. By ignoring the statutory context and focusing on just one section, the Attorney General mistakenly draws "meaning . . . from isolated words or phrases." *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 569.

Additionally, the historic context diminished rather than increased the Attorney General's need for criminal case files in 1879. This decreased further as the need for non-statistical information related to criminal appellate matters ceased in 1923.

The Challenged Rules' expansion of the quo warranto ground may work to interfere with the prosecuting attorneys' authority in statutory causes of action that the Legislature has assigned to them.

The expansion of the enforcement mechanism against the prosecuting attorneys in their capacity as officeholders also interferes with their statutory rights respecting official misconduct inquiries and actions in quo warranto. *See Morath v. Tex. State Tchrs. Ass'n*, No. 03-23-00279-CV,— S.W.3d —, 2025 WL 1449591, at **4–5 (Tex. App.—Austin May 21, 2025, pet. filed) (agency rule that eliminates a statutory "right to file grievances and appeal adverse grievance decisions to the Commissioner and beyond" to the Travis County district court "impose[]

41

additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions.")

### C. The Challenged Rules Violate the Separation of Powers Clause by Interfering with the Prosecuting Attorneys' Core Constitutional Authority.

The Texas Constitution's Separation of Powers Clause provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. 2, § 1.

Because the Separation of Powers Clause "prohibits one branch of government from exercising a power belonging inherently to another," *in re Turner*, 627 S.W.3d 654, 659 (Tex. 2021), it "leads each branch to avoid stoking needless friction with the other coordinate branches of government." *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 487 (Tex. 2024) (citing *Lytle v. Halff*, 12 S.W. 610, 611 (1889)). "The powers conferred by the Constitution upon the state officials are generally held to be exclusive, and except in the manner authorized by the Constitution, these powers cannot be enlarged or restricted." *Garcia v. Laughlin*, 285 S.W.2d 191, 194 (Tex. 1955).

42

### 1. Interference Prong Separation of Powers Clause Challenge.

"Absent the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance, the Attorney General has no authority to independently prosecute criminal cases in trial courts." *State v. Stephens,* 663 S.W.3d 45, 56 (Tex. Crim. App. 2021). The Court of Criminal Appeals invalided a contrary grant of prosecutorial power as a violation of the separation of powers provision by providing the Attorney General "a power that is more 'properly attached' to a member of the judicial branch of government." *Id.* at 57.

The Challenged Rules violate the Separation of Powers Clause because they "*unduly* interfere[] with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990) (emphasis in original). Where the Constitution provides an attorney with the authority to represent the state, allowing another department to "second-guess[]" the officer's "selection of legal arguments, his assessment of the facts and evidence, and the ultimate decision to file suit on those determinations" threatens that officer's "clear constitutional authority." *Webster*, 704 S.W.3d at 503.

43

The Challenged Rules also expressly encroach on core prosecutorial discretion with the creation of an "Oversight Advisory Committee"[56] empowered to obtain "entire case files" and "all correspondence"[57] that it deems relate "to criminal matters and the interests of the state"[58] for which the failure to comply is "official misconduct" under Chapter 87 of the Local Government Code.[59] This is precisely the sort of executive-branch second-guessing of a judicial officer's litigation decisions that article 2, § 1, of the Constitution precludes.

### 2. With Respect to Core Constitutional Authority, the Challenged Rules Deny the Prosecuting Attorneys the Broad Judgment and Discretion He Claims for Himself.

The Supreme Court in *Webster* recently held that the constitutional separation-of-powers provision bars a judicial entity—the Commission for Lawyer Discipline—from "collaterally attack[ing] initial pleadings made before a court." *Webster*, 704 S.W.3d at 502. Rather, "the attorney general's assessments in bringing suit are privileged at a *constitutional* level from collateral review by other branches." *Id*. at 495–96 (emphasis

---

[56] 1 TAC § 56.9(a) & (b).

[57] 1 TAC §§ 56.3(a)(8) & 56.9(c).

[58] The Rule requires retroactive records retention dating back more than four years. 1 TAC § 56.3(b).

[59] 1 TAC § 56.8(1).

in original). There is no discernible reason that Article 2, § 1 does not also protect members of the judicial branch from encroachment on their duties and actions by executive officers just as *Webster* held that it protected executive officials from encroachment by entities of the judicial branch.

Since our Supreme Court has held that the actions of a state's attorneys are not subject to collateral attack, it is hard to see any aspect of the Challenged Rules surviving separation-of-powers scrutiny. The Commission on Lawyer Discipline has "valid" constitutional and statutory powers regarding both the admission of attorneys to practice law in Texas and to discipline them. *Webster*, 704 S.W.3d at 489–94. Nevertheless, the disciplinary commission's review of the Attorney General's selection of legal arguments and ultimate decision of whether the Attorney General files suit in any given matter threatens the Attorney General's "clear constitutional authority." *Id*. at 503. In other words, the disciplinary commission's legitimate authority is limited in that it may not encroach on the exercise of the Attorney General's constitutional authority.

Constitutional limitations respecting review of the Attorney General's "selection of legal arguments, his assessment of the facts and

45

evidence, and the ultimate decision to file suit on those determinations," *id.*, must also be afforded to review of the same actions by a prosecuting attorney. In fact, our Supreme Court relied upon the reasoning of another state's highest court for the proposition that "particular aspects of the prosecutorial function'—including weighing 'the strength of the evidence'—are 'generally [not] well suited for broad judicial oversight.'" *Id.* (quoting *Messameno v. Statewide Grievance Committee*, 663 A.2d 317, 336 (Conn. 1995)). CONN. CONST. art. IV, § 27.[60] Here, though, the Challenged Rules encroach on the prosecuting attorney's "selection of legal arguments, his assessment of the facts and evidence, and the ultimate decision to file suit on those determinations." *See id.* at 503. By adoption of the Rule, the Attorney General seeks to exercise the very same type of review and oversight of county and district attorneys that the Supreme Court in *Webster* held were barred by the separation of powers provision of the Texas Constitution when the Commission on Lawyer Discipline sought to apply them to the Attorney General.

Further, while the disciplinary commission's statutory and derived constitutional authority is well established—*id.* at 489–94—TEX. GOV'T

---

[60] Unlike Texas, Connecticut's prosecutorial power is not vested at a county level, but rather vest "in a chief state's attorney and the state's attorney for each judicial district." *Id.*

CODE § 41.006's use as a tool for open-ended inquiries is not. The Attorney General's GOV'T CODE § 2001.033(a) justification responds to the assertion that the Rule "violates the separation of powers provision in the Texas Constitution," by simply stating that "[t]he rule implements Government Code § 41.006 as it prescribes the time, form, and content of reports the OAG requires from certain district and county attorneys' offices." 50 TEX. REG. at 2175. Because "[e]xceptions to the constitutionally mandated separation of powers are never to be implied in the least [and] must be 'expressly permitted' by the Constitution itself," *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2014), the Attorney General's response is not sufficient.

The Separation of Powers Clause does not permit another department's interference with an attorney for the state's exercise of "broad judgment and discretion." *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924). Judgment and discretion include the "right to investigate the facts and [to] exercise his judgment and discretion regarding the filing of a suit." *Agey v. Am. Lib. Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943); *see also State v. S. Pac. R. Co.*, 24 Tex. 80, 117 (1859) ("[T]he [English] king could direct and control the bringing of suits.) In

47

this state, such direct control, as a legal power, is cut off by the independence of the law officers of the state.").

The Court of Criminal Appeals protects the prosecuting attorneys' "clear constitutional authority" from encroachment in a similar manner to the above-detailed Supreme Court's protection of the attorney general's authority. "An obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial." *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987). Because there is not a "constitutional provision expressly granting the Legislature the power to control a prosecutor's preparation for trial," *id.* at 257, the Court of Criminal Appeals invalidated the Speedy Trial Act. The legislative provision allowing a district court to disqualify a district attorney for being employed adversely prior to his election—CODE CRIM. PROC. art. 2A.105(a) (formerly art. 2.01)—will not apply to "a conflict of interest that does not rise to the level of a due process violation." *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994) (orig. proceeding) (plurality opinion).

Another branch's diversion from the execution of core constitutional authority can itself violate separation of powers. *See Ex parte Perry*, 483

48

S.W.3d 884, 901 (Tex. Crim. App. 2016) (The legislature's use of a penal (or any statute) to limit the governor's veto power and the district attorney's prosecution thereunder violated separation of powers). Compliance with the Rule would interfere with core prosecutorial authority. The broad categories encompassed by the Rule's reporting requirements[61] constitute a facially onerous mandate to retain materials[62] and compile into collections of "all correspondence" or "entire case files" that would otherwise not exist.[63] The requested categories involve decisions "critical to the conduct of a prosecution." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987).[64]

## II. APPELLEES ESTABLISH AN INTERIM PROBABLE, IMMINENT, AND IRREPARABLE INJURY.

As this Court noted "a showing of likely success on the merits [in an *ultra vires* action] is sufficient to satisfy the irreparable-injury

---

[61] 1 TAC §§ 56.3(a)(4), 56(a)(6), 56(a)(7), 56(a)(9), 56.3(a)(10), 56.3(a)(11) & 56.3(a)(12).

[62] 1 TAC §§ 56.6 (retention of possible materials for at least two years after reporting).

[63] *Cf. In re State ex rel. Best*, 616 S.W.3d 594, 600 (Tex. Crim. App. 2021) (CODE CRIM. PROC. art. 38.43 pre-DNA testing provision "does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist").

[64] Core discretionary acts include "the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity." *Id*.

requirement for a temporary injunction. *State v. City of San Marcos*, 714 S.W.3d 224, 245 (Tex. App.—15th Dist. 2025, pet. filed) (quoting. *Hollins*, 620 S.W.3d at 410).[65] The trial court found that the Challenged Rules have already interfered with and would, absent the temporary injunction, continue to interfere with the prosecuting attorneys' core constitutional power by "divert[ing] resources and personnel time from performing necessary tasks related to the investigation and prosecution of criminal activity." [CR 393].

Assuming the Challenged Rules' interference with the prosecuting attorneys' core constitutional authority presents any sort of evidentiary question, no evidence can defeat some evidence. Because the Attorney General did not cross-examine the seven witnesses who testified by declaration, did not present any of his own evidence, and did not brief how the trial court abused its discretion in concluding that Appellees demonstrated interim, probable imminent and irreparable injury, the Attorney has forfeited appellate review of this issue.

Because constitutional injury presents a "legal question," *Rochelle*

---

[65] The Texas Supreme Court in *Hollins* held that where the Election Code does not expressly authorize a county clerk's mass mailing of vote-by-mail *applications*, the question is whether the Election Code implies such authority. 620 S.W.3d at 406. Importantly, the Election Code makes it the specific duty of the Secretary of State "obtain and maintain uniformity in the application, operation, and interpretation of [the] code and [other] election laws." *Id.* at 408 (quoting ELEC. CODE § 31.003).

*v. Lane*, 148 S.W. 558, 561 (1912), this too is likely a presumed injury just like the Attorney General's *ultra vires* act of adopting the Challenged Rules without statutory authority. Undersigned, however, found just a single instance of this presumed constitutional injury as between an attorney general and a prosecuting attorney. The San Antonio Court of Civil Appeals upheld the temporary injunction in favor of the Webb County District Attorney restraining the Attorney General from examining any evidence or compelling the questioning of any witness related to the July 28, 1956, general primary election. *Shepperd v. Alaniz*, 303 S.W.2d 846, 848–50 (Tex. Civ. App.—San Antonio 1957, no pet.). Because "[i]t has always been the principal duty of the district and county attorneys to investigate and prosecute the violation of all criminal laws," *id.* at 850 (emphasis added), the court of appeals upheld the temporary injunction merely because the Webb County District Attorney had already instituted proceedings.

With respect to all Appellees, the trial court found that Appellees demonstrated irreparable harm by (1) the expenditure of "a significant amount of resources, personnel time, and taxpayer funds," which cannot be recovered as damages, and (2) the disclosure of confidential information "that are specifically protected from unauthorized disclosure

51

by Plaintiffs under other state and/or federal laws that contain both civil and criminal penalties." [CR 393]. All Appellees provided substantial uncontested testimony to support the trial court's finding. [Other Appellees' Br. at 14–18].

Despite presenting no evidence to the trial court,[66] the Attorney General asserts it is Appellees' "burden to explain why providing with such information to the Attorney General would violate the (unspecified) confidentiality laws." [Appellants' Br. at 19]. These are detailed in the three verified petitions and nine witness declarations Appellees' submitted in the trial court (contra the Attorney General's submission of any verified filings of any sort). Because of the serious consequences of improper disclosure, undersigned are particularly concerned about the Challenged Rules' failure to address grand jury materials separately. *See Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 619–24 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (removal from office for public disclosure of grand jury testimony).

---

[66] Rather the Attorney General purports to create his own record on appeal with his claim that the Montgomery and Camerson District Attorney have filed their "initial reports" to the Attorney General. [Appellants' Br. 4-5 & 32-33]. Even if a trial court could abuse its evidentiary discretion by not considering something that postdated the trial court's order, the Legislature requires this Court to "direct the district court to conduct any necessary evidentiary hearings," TEX. GOV'T CODE § 2001.038(f). Further, and as copiously briefed in the other Appellees' response brief, unrecoverable compliance costs already have and will be substantial.

The Code of Criminal Procedure prohibits the attorney representing the state from disclosing "anything transpiring before the grand jury" unless covered by an exception. CODE CRIM. PROC. art. 20A.204(a). The attorney representing the state may disclose grand jury materials to a "law enforcement agency" if that attorney—rather than the Oversight Advisory Committee—determines that the disclosure "is necessary to assist the attorney in the performance of the attorney's duties." TEX. CODE CRIM. PROC. art. 20A.204(b). Section 41.006 of the Government Code, which the Attorney General asserts traces back to 1879 does not trump provisions Code of the Criminal Procedure provisions enacted in 2019.[67]

### III. THE TRIAL COURT PROPERLY ENJOINED THE ATTORNEY GENERAL FROM ENFORCING AND IMPLEMENTING THE CHALLENGED RULES REGARDLESS OF A PROSECUTING ATTORNEY'S PARTY STATUS.

Not only does this Court have the authority to affirm the trial court's temporary relief order. The U.S. Supreme Court decision the Attorney General cites supports the Court doing exactly that. [Appellants' Br. at 37 (citing *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025))].

---

[67] Act of May 21, 2019, 86th Leg., R.S., ch. 469, § 1.04, 2019 Tex. Gen. 1076, 1078 (codified Tex. Code Crim. Proc. art. 20A.204).

A court of appeals' authority to grant temporary orders is expressly "the parties' rights." TEX. R. APP. P. 29.3. The Attorney General misreads the U.S. Supreme Court's decision in *Trump v. CASA*. As Justice Kavanaugh noted in concurrence, "plaintiffs may ask a court to preliminarily 'set aside' a new agency rule." *Id*. at 2567 (Kavanaugh, J., concurring) (citing 5 U.S.C. § 706(2)). Indeed, the majority expressly stated that "[n]othing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." The decision from the Texas Supreme Court that this Court properly relied to narrow the trial court's temporary injunction to the parties expressly noted this distinction. *In re Abbott*, 645 S.W.3d 276, 283 (Tex. 2022) ("Whether or not the plaintiffs are right about the scope of a district court's power to enjoin an administrative rule, that question is beside the point.")

Under 5 U.S.C. § 706(2)(C), a federal court shall set aside an agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." One proper challenge under the Texas Administrative Procedures Act is whether "[a]gency rules [are] authorized and consistent with their statutory authority." *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 569. The trial court's temporary

injunction should apply to any affected prosecuting attorney.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, this Court should affirm the trial court's order granting Appellees' applications for a temporary injunction in Cause No. D-1-GN-25-003445, Cause No. D-1-GN-25-003531, and Cause No. D-1-GN-25-003581.

DATED:    AUGUST 20, 2025          RESPECTFULLY SUBMITTED,


_/s/ Justin C. Pfeiffer_

JUSTIN C. PFEIFFER
State Bar No. 24091473
GAVRILOV & BROOKS, PC
(Houston Office)
P.O. Box 56632
Houston, Texas 77256
[Tel.] (832) 312-7900
jpfeiffer@gavrilovlaw.com

_Counsel For_ BRIAN M. MIDDLETON, _in his official capacity as Fort Bend County District Attorney (268th Judicial District)_

## CERTIFICATE OF SERVICE

On August 20, 2025, I served the Brief of Appellees Brian M. Middleton in his official capacity as Fort Bend County District Attorney (268th Judicial District) via the Court's electronic filing manager in compliance with the Texas Rules of Appellate Procedure. In accordance with TEX. R. APP. P. 9.5(b)(1), I also served counsel for all parties by their respective email addresses:

| Counsel for Appellants | |
|---|---|
| Ken Paxton | Ken.Paxton@oag.texas.gov |
| Brent Webster | Brent.Webster@oag.texas.gov |
| William R. Peterson | William.Peterson@oag.texas.gov |
| William F. Cole | William.Cole@oag.texas.gov |
| Benjamin Wallace Mendelson | Ben.Mendelson@oag.texas.gov |
| Meagan Corser | Megan.Corser@oag.texas.gov |
| Kimberly Gdula | Kimberly.Gdula@oag.texas.gov |
| William H. Farrell | Biff.Farrell@oag.texas.gov |
| *Counsel for Appellees Travis County, Travis County Attorney Delia Garza, and Travis County District Attorney José Garza (53d Judicial District)* | |
| Leslie Dippel | Leslie.Dippel@traviscountytx.gov |
| Todd Clark | Todd.Clark@traviscountytx.gov |
| Cynthia Veidt | Cynthia.Veidt@traviscountytx.gov |
| *Counsel for Appellees El Paso County District Attorney James Montoya (34th Judicial District), El Paso County Attorney Christina Sanchez, and El Paso County* | |
| Christina Sanchez | ch.sanchez@epcountytx.gov |
| Bernardo Rafael Cruz | b.cruz@epcountytx.gov |

| | |
|---|---|
| *Counsel for Appellees Dallas Criminal District Attorney John Creuzot; Dallas County; Bexar Criminal District Attorney Joe Gonzales; and Bexar County* | |
| Alexandria Oberman | aoberman@milchev.com |
| Michael J. Satin | msatin@milchev.com |
| *Counsel for Appellees District Attorney Sean Teare and Harris County* | |
| Bradley W. Snead | snead@wrightclosebarger.com |
| Michael Adams-Hurta | hurta@wrightclosebarger.com |
| Jonathan G.C. Fombonne | Jonathan.Fombonne@harriscountytx.gov |
| Tiffany S. Bingham | Tiffany.Bingham@harriscountytx.gov |
| Christopher Garza | Christopher.Garza@harriscountytx.gov |
| *Counsel for Appellee Shawn W. Dick in his official capacity as Williamson County District Attorney (26th Judicial District)* | |
| Randy T. Leavitt | randy@randyleavitt.com |
| Bob Heath | bheath@bickerstaff.com |

/s/ *Justin C. Pfeiffer*

JUSTIN C. PFEIFFER


**CERTIFICATE OF COMPLIANCE**

Microsoft Word reports that the foregoing Response Brief of Appellee Brian M. Middleton, in his official capacity as District Attorney for Fort Bend County (268th Judicial District), contains 11,967 words, excluding the portions of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ *Justin C. Pfeiffer*

JUSTIN C. PFEIFFER

# In the Court of Appeals
## for the Fifteenth Judicial District
## Austin, Texas

KEN PAXTON, *in his official capacity as Attorney General of Texas* and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS,

*Appellants*,

*v.*

DELIA GARZA, *in her official capacity as Travis County Attorney*, ET AL.; JOHN CREUZOT, *in his official capacity as Dallas County Criminal District Attorney*, ET AL.; and BRIAN M. MIDDLETON, *in his official capacity as District Attorney of Fort Bend County (268th Judicial District)*, ET AL.,

*Appellee*.

On Interlocutory Appeal from the
459th Judicial District Court, Travis County
No. D-1-GN-25-003445 *consolidated with*
No. D-1-GN-25-00351 *and* No. D-1-GN-003581

## INDEX AND SUPPLEMENTAL APPENDIX OF BRIAN M. MIDDLETON IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF FORT BEND COUNTY (268TH JUDICIAL DISTRICT)

JUSTIN C. PFEIFFER
State Bar No. 24091473
GAVRILOV & BROOKS, PC
P.O. Box 56632
Houston, Texas 77256
[Tel.] (832) 312-7900
JPfeiffer@gavrilovlaw.com

*Counsel for* BRIAN M. MIDDLETON, *in his official capacity as Fort Bend County District Attorney (268th Judicial District)*

**ORAL ARGUMENT REQUESTED**

**INDEX OF THE SUPPLEMENTAL APPENDIX**

KEN PAXTON, *in his official capacity as Attorney General of Texas,* ET AL.

*vs.* DELIA GARZA, *in her official capacity as Travis County Attorney*, ET AL.

Cause Nos. D-1-GN-25-003445 *consolidated with* No. D-1-GN-25-003531 *and* No. D-1-GN-25-003581; Appellate No. 15-25-00116-CV

                                                                    PAGES

Defendants' Amended Designation of Request for Clerk's
Record filed July 2, 2025 ................................................................ 001-003

   [Automated Certificate of eService] ...................................... 004-006

Supplement and Further Argument in Support of Plaintiffs'
Application filed June 13, 2025 ...................................................... 007-013

   [Certificate of Service] ......................................................... 014-016

   Exhibit 1 Verification Affidavit of Brian M. Middleton ........ 017-019

   Exhibit 2 Declaration of Brian M. Middleton ........................ 020-030

   Exhibit 3 Declaration of Shawn W. Dick ............................... 031-040

   [Automated Certificate of eService] ............................................ 041

Reply to Defendants' to Plaintiffs' Original Verified Petition
and Request for a Temporary Injunction filed June 16, 2025 ...... 042-050

   [Certificate of Service] ......................................................... 051-053

   Chart: Evolution of Section 41.006 ...................................... 053-054

   [Automated Certificate of eService] ............................................ 056

Sworn Verification (August 18, 2025) ................................................. 057

7/2/2025 11:08 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-003445
Selina Hamilton

CAUSE NO. D-1-GN-25-003445
(Lead Case)

| | | |
|---|---|---|
| DELIA GARZA, in her official Capacity as Travis County Attorney; et al. | § § § | IN THE DISTRICT COURT |
| v. | § § § | OF TRAVIS COUNTY, TEXAS |
| KEN PAXTON, in his official capacity as Attorney General for the State of Texas, et al. | § § | 459th JUDICIAL DISTRICT |

CONSOLIDATED WITH

CAUSE NO. D-1-GN-25-003531

| | | |
|---|---|---|
| JOHN CREUZOT, et al. | § § | IN THE DISTRICT COURT |
| v. | § § | OF TRAVIS COUNTY, TEXAS |
| KEN PAXTON, et al. | § | 353rd JUDICIAL DISTRICT |

AND

CAUSE NO. D-1-GN-25-003581

| | | |
|---|---|---|
| BRIAN M. MIDDLETON, et al. | § § | IN THE DISTRICT COURT |
| v. | § § | OF TRAVIS COUNTY, TEXAS |
| KEN PAXTON, et al. | § | 98th JUDICIAL DISTRICT |

### DEFENDANTS' AMENDED DESIGNATION OF REQUEST FOR CLERK'S RECORD

Defendant asks that the following be included in the Clerk's Record:

| 1. | 05/16/2025 | PLAINTIFFS' ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND VERIFIED APPLICATION FOR TEMPORARY INJUNCTION |
|---|---|---|
| 2. | 05/16/2025 | PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT |
| 3. | 05/16/2025 | PLAINTIFF'S ORIGINAL VERIFIED PETITION |
| 4. | 05/16/2025 | NOTICE OF CONSTITUTIONAL CHALLENGE |

Supp. App. 001

| 5. | 05/16/2025 | PLAINTIFFS' SUPPLEMENT AND BRIEF IN SUPPORT OF APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION |
|---|---|---|
| 6. | 05/16/2025 | NOTICE REGARDING FILING OF ACTION CHALLENGING AGENCY RULES OR SEEKING DECLARATORY JUDGMENT AGAINST A STATE AGENCY UNDER CHAPTER 10 OF THE TRAVIS COUNTY LOCAL RULES OF CIVIL PROCEDURE AND RULES OF DECORUM |
| 7. | 05/16/2025 | NOTICE OF ACTION FILED CHALLENGING AGENCY RULES UNDER CHAPTER 10 OF THE TRAVIS COUNTY LOCAL RULES OF CIVIL PROCEDURE AND RULES OF DECORUM |
| 8. | 06/06/2025 | UNOPPOSED MOTION TO CONSOLIDATE CASES UNDER RULE 174(A) |
| 9. | 06/11/2025 | AGREED ORDER GRANTING PLAINTIFFS UNOPPOSED MOTION TO CONSOLIDATE CASES |
| 10. | 06/13/2025 | DEFENDANTS ORIGINAL ANSWER AND GENERAL DENIAL |
| 11. | 06/13/2025 | PLAINTIFFS JOINT EXHIBIT LIST |
| 12. | 06/13/2025 | DEFENDANTS' CONSOLIDATED RESPONSE TO PLAINTIFFS' ORIGINAL PETITIONS AND APPLICATIONS FOR TEMPORARY INJUNCTION |
| 13. | 06/13/2025 | DISTRICT ATTORNEYS BRIAN MIDDLETON'S AND SHAWN DICK'S SUPPLEMENT AND FURTHER ARGUMENT IN SUPPORT OF THEIR APPLICATION FOR A TEMPORARY INJUNCTION* |
| 14. | 06/14/2025 | DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' ORIGINAL PETITIONS AND APPLICATIONS FOR TEMPORARY INJUNCTION |
| 15. | 06/16/2025 | DISTRICT ATTORNEYS BRIAN MIDDLETON'S AND SHAWN DICK'S REPLY TO THE DEFENDANTS' RESPONSE TO THEIR APPLICATION FOR A TEMPORARY INJUNCTION* |
| 16. | 06/16/2025 | JOINT STIPULATION OF UNDISPUTED FACTS AND ADMISSIBILITY OF EXHIBITS |
| 17. | 06/20/2025 | ORDER GRANTING PLAINTIFFS APPLICATIONS FOR TEMPORARY INJUNCTION |
| 18. | 06/23/2025 | REQUEST FOR ISSUANCE OF PROCESS - TEMPORARY INJUNCTION |
| 19. | 06/27/2025 | DEFENDANTS' NOTICE OF APPEAL |
| 20. | 06/30/2025 | TAMES RECORD SUBMISSION FOR NOA FILED WITH 15TH COA |
| 21. | 07/01/2025 | DEFENDANTS' DESIGNATION OF CLERK'S RECORD |
| 22. | 07/01/2025 | DEFENDANTS' DESIGNATION OF REPORTER'S RECORD |

*Items added

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General
Texas Bar No. 0079531
biff.farrell@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 936-2650
Fax: (512) 320-0667
**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, a true and correct copy of the foregoing *Defendant's Designation of Clerk's Record* was served on all counsel of record via e-mail.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Myette on behalf of William Farrell
Bar No. 796531
nicole.myette@oag.texas.gov
Envelope ID: 102689557
Filing Code Description: Request
Filing Description: DEFENDANTS' AMENDED DESIGNATION OF REQUEST FOR CLERK'S RECORD
Status as of 7/8/2025 12:28 PM CST

Associated Case Party: JOSE P. GARZA, IN HIS OFFICIAL CAPACITY AS TRAVIS COUNTY DISTRICT ATTORNEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Leslie Dippel | | leslie.dippel@traviscountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Todd A.Clark | | Todd.Clark@traviscountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Farrell | 796531 | biff.farrell@oag.texas.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: SHAWN W. DICK DISTRICT ATTORNEY OF WILLIAMSON COUNTY, TEXAS (26TH JUDICIAL DISTRICT)

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randy Leavitt | 12098300 | randy@randyleavitt.com | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: BRIAN M. MIDDLETON DISTRICT ATTORNEY OF FORT BEND COUNTY, TEXAS (268TH JUDICIAL DISTRICT)

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Myette on behalf of William Farrell
Bar No. 796531
nicole.myette@oag.texas.gov
Envelope ID: 102689557
Filing Code Description: Request
Filing Description: DEFENDANTS' AMENDED DESIGNATION OF REQUEST FOR CLERK'S RECORD
Status as of 7/8/2025 12:28 PM CST

Associated Case Party: BRIAN M. MIDDLETON DISTRICT ATTORNEY OF FORT BEND COUNTY, TEXAS (268TH JUDICIAL DISTRICT)

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Justin Pfeiffer | 24091473 | jpfeiffer@gavrilovlaw.com | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 7/2/2025 11:08:01 AM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: HARRIS COUNTY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tiffany Bingham | 24012287 | tiffany.bingham@harriscountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: CHRISTINA SANCHEZ, IN HER OFFICIAL CAPACITY AS EL PASO COUNTY ATTORNEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bernardo RafaelCruz | | b.cruz@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Christina Sanchez | | Ch.sanchez@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Carl Jones | | Carl.Jones@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Pamela Lopez | | Pam.Lopez@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: DELIA GARZA, IN HER OFFICIAL CAPACITY AS TRAVIS COUNTY ATTORNEY

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Myette on behalf of William Farrell
Bar No. 796531
nicole.myette@oag.texas.gov
Envelope ID: 102689557
Filing Code Description: Request
Filing Description: DEFENDANTS' AMENDED DESIGNATION OF REQUEST FOR CLERK'S RECORD
Status as of 7/8/2025 12:28 PM CST

Associated Case Party: DELIA GARZA, IN HER OFFICIAL CAPACITY AS TRAVIS COUNTY ATTORNEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cynthia  W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: JAMES MONTOYA, IN HIS OFFICIAL CAPACITY AS EL PASO COUNTY DISTRICT ATTORNEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christina Sanchez | | Ch.sanchez@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 7/2/2025 11:08:01 AM | SENT |

Associated Case Party: DALLAS COUNTY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alexandria Oberman | | aoberman@milchev.com | 7/2/2025 11:08:01 AM | SENT |
| Michael Satin | | msatin@milchev.com | 7/2/2025 11:08:01 AM | SENT |

Supp. App. 006

6/13/2025 8:03 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-003581
Stephanie Garza

CAUSE NO. D-1-GN-25-003581

| | | |
|---|---|---|
| **BRIAN M. MIDDLETON,** *in his official capacity as District Attorney of Fort Bend County, Texas (268th Judicial District)* **and SHAWN W. DICK,** *in his official capacity as District Attorney of Williamson County, Texas (26th Judicial District),* | § § § § § § § § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § § | |
| **v.** | § § § | **98th JUDICIAL DISTRICT** |
| **WARREN KENNETH PAXTON, JR.,** *in his official capacity as Texas Attorney General,* **and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS,** | § § § § § § § § § | |
| *Defendants.* | § | **TRAVIS COUNTY, TEXAS** |

**PLAINTIFFS' SUPPLEMENT AND FURTHER ARGUMENT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION**

---

On May 16, 2025, Plaintiffs Brian M. Middleton, in his official capacity as the District Attorney for the 268th Judicial District of Texas (Fort Bend County) and Shawn W. Dick, in his official capacity as the District Attorney for the 26th Judicial District of Texas (Williamson County) (collectively,

"District Attorneys" or "Plaintiffs") filed Plaintiffs' Original Verified[1] Petition and Request for Temporary and Permanent Injunction against Defendants Warren Kenneth Paxton, Jr., in his official capacity as Texas Attorney and the Office of Attorney General of the State of Texas (collectively, "Attorney General" or "Defendants"). Plaintiffs file this supplement in support of Plaintiffs' application for a temporary injunction enjoining enforcement and implementation of the Attorney General's recently adopted "District and County Attorney Reporting Requirements,"[2] to include Declarations of District Attorneys Brian Middleton and Shawn Dick:

1.      District attorneys may and have successfully sought temporary injunctions where the Attorney General interferes with core prosecutorial authority. In *Shepperd v. Alaniz*, for example, the San Antonio Court of Civil Appeals upheld the temporary injunction in favor of the Webb County district attorney restraining the Attorney General from prosecuting a matter that Webb County was already prosecuting. 303 S.W.2d 846, 848–50 (Tex. Civ. App.—San Antonio 1957, no pet.).

---

[1] Attached is **Exhibit 1** is the Verification Affidavit of Plaintiff Brian M. Middleton. Plaintiff Shawn W. Dick submitted the Original Petition's verification.

[2]. 50 TEX. REG. 2173–2182 (Mar. 28, 2025) (adopting 1 TAC Ch. 56) (hereinafter, the "Adopted Rule" or "Rule").

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 2

Supp. App. 008

2.  Because "[i]t has always been the principal duty of the district and county attorneys to ***investigate and prosecute*** the violation of all criminal laws," *id.* at 850, the court of appeals affirmed the trial court's grant of a temporary injunction without regard to a showing of irreparable harm or a balance of the harms. Whether an action violates the Separation of Powers Clause presents a "legal question." *Rochelle v. Lane*, 148 S.W. 558, 561 (1912).

3.  As set out in the attached Declarations of District Attorneys Brian Middleton[3] and Shawn Dick,[4] the Rule expressly encroaches on core prosecutorial discretion core prosecutorial discretion with the creation of an "Oversight Advisory Committee"[5] empowered to obtain "entire case files" and "all correspondence"[6] that it deems relate "to criminal matters and the interests of the state" for which the failure to comply is "official misconduct" under Chapter 87 of the Local Government Code.[7] Both declarations extensively detail how the mandate is onerous and time-consuming (after already expending a great deal of time to be able to so declare).

---

[3] Attached is **Exhibit 2** is the Declaration of Plaintiff Brian M. Middleton, District Attorney for the 268th Judicial District of Texas.

[4] Attached is **Exhibit 3** is the Declaration of Plaintiff Shawn W. Dick, District Attorney for the 26th Judicial District of Texas.

[5] 1 TAC § 56.9(a) & (b).

[6] 1 TAC §§ 56.3(a)(8) & 56.9(c).

[7] 1 TAC § 56.8(1).

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

4. The Adopted Rule's justification states it "helps ensure that county and district attorneys are consistently complying with statutory duties, including seeking justice for citizens who have been harmed by a criminal act, appropriately administering funds, and appropriately prosecuting crimes." 50 TEX. REG. at 2173. And the reporting requirements complained of all touch on prosecutorial decisions "critical to the conduct of a prosecution," including determining targets, charges, witnesses, plea bargains offered, dismissals, and/or offers of transaction immunity offers and use immunity. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987).

5. "To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." State v. Loe, 692 S.W.3d 215, 226 (Tex. 2024). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). There is irreparable injury here for at least three reasons.

6. First, this case seeks to prevent a violation of the state constitution. As the Fifteenth Court of Appeals has held, "there is no question that a local official's violation of state law inflicts irreparable harm on the

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 4

State." *State by and Through the Office of the Attorney General v. City of San Marcos*, — S.W.3d — 2025 WL 1142065, at *8 (Tex. App—15th Dist., Apr. 17, 2025, no pet. h.). While that case involved a dispute between a state officer and a city, here the dispute is between constitutionally created state officers, both of which are charged with representing the state and both of which have an interest in seeing that the state's law—especially its constitution—is observed. TEX. CONST., art. 4, § 22 & art. 5, § 21. Here, the attorney general, an executive official, seeks to exercise the legislative power of rulemaking in the absence of legislative authorization and seeks supervisory authority over judicial officers all in violation of art. 2, § 1, of the Texas Constitution. The Fifteenth Court has held that in a suit to enjoin an official's ultra vires action "a showing of likely success on the merits is sufficient to satisfy the irreparable-injury requirement for a temporary injunction." *San Marcos*, 2025 WL 1142065, at *8 (quoting State v. Hollins, 620 S.W.3d 400, 410 (Tex. 2020)).

7. Second, an injury is irreparable if "damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. As set out in the Declarations, the Adopted Rule interferes with District Attorneys Brian Middleton and Shawn Dick's core constitutional authority. The loss of a constitutional right is often not measurable in pecuniary terms, particularly related to a violation of the Separation of Powers Clause. Further,

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 5

Supp. App. 011

implementation of the Rule has already and will negatively affect each District Attorney's ability to prosecute criminal cases. Allowing another department to "second-guess[]" the attorney for the state's "selection of legal arguments, his assessment of the facts and evidence, and the ultimate decision to file suit on those determinations" threatens that officer's "clear constitutional authority." *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 503 (Tex. 2024). It is not possible to assign a dollar value on the delay or potential reduction in prosecution activity attributable to the reassignment of resources.

8. Finally, the injury to the District is irreparable because, even if it were possible to assign a monetary value to it, monetary relief is not available in either an *ultra vires* action, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009), or a declaratory judgment action, *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). However, as demonstrated by the declarations, compliance costs will run into the millions.

## PRAYER

9. For the foregoing reasons stated here and for the reasons stated in the Original Verified Petition, Plaintiffs respectfully request the Court grant Plaintiff's application for a temporary injunction enjoining Defendants from enforcing and implementing Texas Administrative Code Chapter 56 pending a final trial on the merits.

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 6

Supp. App. 012

RESPECTFULLY SUBMITTED on this 13th of June, 2025.

/s/ Justin C. Pfeiffer
JUSTIN C. PFEIFFER (SBN 24091473)
*Counsel of Record*
GAVRILOV & BROOKS, PC
(Houston Office)
P.O. Box 56632
Houston, Texas 77256
[Tel.] (832) 312-7900
jpfeiffer@gavrilovlaw.com

COUNSEL FOR BRIAN M. MIDDLETON, IN HIS OFFICIAL CAPACITY AS FORT BEND COUNTY DISTRICT ATTORNEY (268TH JUDICIAL DISTRICT)

| | |
|---|---|
| C. ROBERT HEATH(SBN 09347500) | /s/ Randy T. Leavitt |
| BICKERSTAFF HEATH DELGADO ACOSTA | RANDY T. LEAVITT (SBN 12098300) |
| 1601 S Mopac Expy. | *Counsel of Record* |
| Suite 400 | LAW OFFICE OF RANDY T. LEAVITT |
| Austin, TX 78746-7017 | 1301 Rio Grande St |
| [Tel.] (512) 404-7821 | Austin, TX 78701-1711 |
| bheath@bickerstaff.com | [Tel.] (512) 476-4475 |
| | randy@randyleavitt.com |

COUNSEL FOR SHAWN M. DICK IN HIS OFFICIAL CAPACITY AS WILLIAMSON COUNTY DISTRICT ATTORNEY (26TH JUDICIAL DISTRICT)

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 7

Supp. App. 013

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was forwarded to Defendants via email and all counsel of record by electronic filing in accordance with the Texas Rules of Civil Procedure and Local Rules on June 13, 2025, and by email to counsel in consolidated matters as follows:

**Counsel for Defendants Warren Kenneth Paxton, Jr., Attorney General of Texas and the Office of the Attorney General of Texas:**

William H. "Biff" Farrell
Assistant Attorney General
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 979-5561
Facsimile: (512) 320-0667

**For Cause No. D-1-GN-25-003445 (459th Judicial District Court):**

*Attorneys for Travis County, Travis County Attorney Delia Garza, and Travis County District Attorney José Garza:*
Leslie W. Dippel
Executive County Attorney
Leslie.Dippel@traviscountytx.gov
Todd A. Clark
Assistant County Attorney
Todd.Clark@traviscountytx.gov
Cynthia W. Veidt
Assistant County Attorney
Cynthia.Veidt@traviscountytx.gov
OFFICE OF DELIA GARZA
TRAVIS COUNTY ATTORNEY

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Supp. App. 014

P.O. Box 1748
Austin, Texas 78767
Telephone:  (512) 854-9513
Facsimile:   (512) 854-4808

*Attorneys for El Paso County District Attorney James Montoya, El Paso County Attorney Christina Sanchez, and El Paso County:*
Christina Sanchez
El Paso County Attorney
ch.sanchez@epcountytx.gov
Bernardo Rafael Cruz
Assistant County Attorney
b.cruz@epcountytx.gov
OFFICE OF CHRISTINA SANCHEZ
EL PASO COUNTY ATTORNEY
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247

**For Cause No. D-1-GN-25-003531 (353rd Judicial District Court):**

*Counsel for Criminal District Attorney John Creuzot; Dallas County; Criminal District Attorney Joe Gonzales; and Bexar County:*
Alexandria Oberman
Email: aoberman@milchev.com
Telephone: (202) 626-6049
Michael J. Satin (admitted *pro hac vice*)
Email: msatin@milchev.com
Telephone: (202) 626-6009
Laura G. Ferguson (admitted *pro hac vice*)
Email: lferguson@milchev.com
Telephone: (202) 626-5567
MILLER & CHEVALIER
CHARTERED
900 16th Street, NW
Washington, DC 20006
Facsimile: (202) 626-5801

*Counsel for District Attorney Sean Teare and Harris County:*

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 9

Supp. App. 015

Jonathan G.C. Fombonne
Deputy County Attorney and First Assistant
Jonathan.Fombonne@harriscountytx.gov
Tiffany S. Bingham
Managing Counsel, Affirmative & Special Litigation Division
Tiffany.Bingham@harriscountytx.gov
Christopher Garza
Deputy Division Director, Affirmative & Special Litigation Division
Christopher.Garza@harriscountytx.gov

Office of The Harris County Attorney
CHRISTIAN D. MENEFEE
HARRIS COUNTY ATTORNEY
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*/s/ Justin C. Pfeiffer*
JUSTIN C. PFEIFFER (SBN 24091473)

Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 10

Supp. App. 016

**EXHIBIT 1**

**PLAINTIFFS' SUPPLEMENT AND FURTHER ARGUMENT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION**

**CAUSE NO. D-1-GN-25-003581**


**VERIFICATION AFFIDAVIT OF BRIAN M. MIDDLETON**

Supp. App. 017

CAUSE NO. D-1-GN-25-003581

| | | |
|---|---|---|
| BRIAN M. MIDDLETON, *in his official capacity as District Attorney of Fort Bend County, Texas (268th Judicial District)* and SHAWN W. DICK, *in his official capacity as District Attorney of Williamson County, Texas (26th Judicial District),* | §§§§§§§§§§§ | IN THE DISTRICT COURT |
| *Plaintiffs,* | §§ | |
| v. | §§§ | 98th JUDICIAL DISTRICT |
| WARREN KENNETH PAXTON, JR., *in his official capacity as Texas Attorney General,* and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS, | §§§§§§§§§ | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## VERIFICATION AFFIDAVIT OF BRIAN M. MIDDLETON

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF FORT BEND | § |

Before me, the undersigned notary, on this day personal appeared Brian M. Middleton, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"1.    My name is Brian M. Middleton. I am the elected District Attorney for the 268th Judicial District of Texas (Fort Bend County).

2.    I am over eighteen years of age and competent to make this affidavit.

Supp. App. 018

4.    I read Plaintiffs' Original Verified Petition and Application for Temporary and Permanent Injunction in the above-stated cause of action prior to the May 16, 2025 filing. The facts stated in the Original Verified Petition were and are within my personal knowledge and are true and correct.

5.    My colleague and Co-Plaintiff, Shawn W. Dick—the elected District Attorney for the 26th Judicial District of Texas (Williamson County)— verified the original petition at filing. The Texas Rules of Civil Procedure require that a petition seeking a writ of injunction be verified, TEX. R. CIV. P. 682, not that all plaintiffs must verify a petition seeking a writ of injunction. For the sake of completeness rather than any legal requirement, I join my Co-Plaintiff in verifying the original petition now."



Brian M. Middleton
Fort Bend County District Attorney

Sworn and subscribed before me on this the 13th day of June, 2025.

Notary Public in and for the State of Texas

APRIL WASHINGTON
NOTARY PUBLIC, STATE OF TEXAS
Notary ID #12818903-9
Expires January 22, 2027

VERIFICATION AFFIDAVIT OF BRIAN M. MIDDLETON

**EXHIBIT 2**

**PLAINTIFFS' SUPPLEMENT AND FURTHER ARGUMENT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION**

**CAUSE NO. D-1-GN-25-003581**


**DECLARATION OF BRIAN M. MIDDLETON**

**DATED JUNE 13, 2025**

Supp. App. 020

| | | |
|---|---|---|
| **BRIAN M. MIDDLETON,** *in his official capacity as District Attorney of Fort Bend County, Texas (268th Judicial District)* **and SHAWN W. DICK,** *in his official capacity as District Attorney of Williamson County, Texas (26th Judicial District),* | § § § § § § § § § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § § | |
| **v.** | § § | **98th JUDICIAL DISTRICT** |
| **WARREN KENNETH PAXTON, JR.,** *in his official capacity as Texas Attorney General,* **and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS,** | § § § § § § § § | |
| *Defendants.* | § | **TRAVIS COUNTY, TEXAS** |

### DECLARATION OF BRIAN M. MIDDLETON

I, Brian M. Middleton, declare as follows:

1.  I am the elected District Attorney for the 268th Judicial District of Texas (Fort Bend County Attorney) and have served as the District Attorney for the past 6.5 years.

2.  I am over eighteen years of age and competent to make this declaration. I have personal knowledge of all matters set forth herein or have provided such information necessary to confirm the statements in this

declaration, and all such statements are true and correct. If called as a witness, I could and would competently testify thereto under oath.

3.  Prior to being elected as the District Attorney I served as an assistant prosecuting attorney in the Fort Bend County Attorney's Office. I also served as an assistant attorney general in the Habeas Corpus Division of the Office of the Texas Attorney General and as a briefing attorney for Judge Morris Overstreet at the Texas Court of Criminal of Appeals.

4.  My training, education, experience as a prosecutor in the State of Texas and current position of District Attorney make me familiar with the constitutional duties and core functions of Texas prosecuting attorneys. I am also familiar with the collection, retention and storage of data, documents and media obtained in prosecuting attorney offices across the state and am intimately familiar with those matters in the Office of the District Attorney for the 268th Judicial District of Texas. ("Office").

5.  I have read and am familiar with the "District and County Attorney Reporting Requirements" Chapter 56 (§§ 56.1–56.10) of Title 1 of the Texas Administrative Code ("TAC"), the "District and County Attorney Reporting Requirements," adopted by the Office of the Attorney General of Texas ("Attorney General") in March. 50 TEX. REG. 2173–2182 (Mar. 28, 2025) (the "Adopted Rule" or "Rule"). As extensively detailed in the Original Verified Petition and Application for Temporary Injunction and Permanent

Injunction—which my Co-Plaintiff verified at the time of filing and for which I also file a verification solely for the sake of completeness—this declaration provides further detail as to the irreparable harm the Adopted Rule foists upon the Office in submitting "an initial, and quarterly and annual reports." 1 TAC § 56.1.

6. The Office handles thousands of cases—the majority of which would have some relevance under the Adopted Rule. From January 2021 to April 2, 2025, the period covered by the initial report, the Office received over 55,000 case submissions in adult cases alone. Felony cases, which are almost always the subject to grand jury proceedings prior to indictment accounted for over 23,000 of that number. Due to the Office's antiquated case management system for juvenile cases, I requested the information from Fort Bend's Juvenile Probation Department. From the beginning of Fiscal Year 2021 (September 1, 2020) and April 30, 2025, there were 5,197 juvenile cases.

7. At present, the Office has 174 employees, including 89 assistant prosecuting attorneys—all of whom may have relevant materials—due to the broad categories of "correspondence" for which the Adopted Rule requires reporting. The Adopted Rule compels reporting of "correspondence," which includes "any email, letter, memorandum, instant message, text message, or direct message, received or issued by an employee of the reporting entity," 1 TAC § 56.2(2), for five categories:

(a) correspondence describing or containing an analysis of a district or county attorney's "policy not to indict a category or sub-category of criminal offenses," 1 TAC § 56.3(a)(9);

(b) "correspondence with any employee of a federal agency regarding a decision whether to indict an individual," 1 TAC § 56.3(a)(10);

(c) "correspondence with any non-profit organization regarding a decision whether to indict an individual," 1 TAC § 56.3(a)(11);

(d) correspondence by an assistant prosecutor regarding "that attorney's resignation under a formal or informal complaint process," 1 TAC § 56.3(a)(12); and

(e) correspondence requested by the Oversight Advisory Committee, 1 TAC § 56.3(a)(8), regarding "instances that an arrest was made for a violent crime but no indictment was issued, the case was resolved by deferred prosecution or a similar program or all charges were dropped," 1 TAC § 56.3(a)(7).

8.     Individual county computers and the entire network are routinely recorded with back up tapes also recorded. The Office's (and the County's) employees are routinely advised that the destruction of public records (including emails) may constitute a criminal offense. Departing employes, in particular, are advised as to the broad definitions employed in Texas record retention statutes and County record retention policies (including use of

County-owned cellular phones). Nevertheless, 52 assistant prosecuting attorneys and 40 staff members have left the Office since January 1, 2021. Fort Bend County IT—or more likely a third-party vendor—would have to collect current and former employee emails (and other forms of communications), transfer them to a document review platform, and run searches for responsive documents.

8. Locating, reviewing, and producing responsive correspondence is also difficult because of the broad scope implicated. The Office routinely interacts with at 15 non-profit organizations, including the Fort Bend Women's Center, Child Advocates of Fort Bend, George Foundation, Wessendorff Foundation, Katy Christian Ministries, East Fort Bend Needs, Helping Hands, Fort Bend Senior Meals on Wheels, Access Health, Fort Bend Hope, United Way, Catholic Charities, United Against Human Trafficking, Hope for Three, and the Fort Bend Literacy Council. To search for responsive correspondence with non-profit organizations, the Office would have to have to identify every potential individual at those 15 organizations with which an employee of the Office interacts or has interacted. Fort Bend County IT—or more likely a third-party vendor—would then have to collect the materials and put them into a reviewable format. These would, in turn, have to be reviewed further to ensure relevance to an actual or contemplated indictment. It is difficult to envision how such could be completed without manual review.

9. Similarly, for correspondence with "any employee of a federal agency," the Office would also have to determine individual employees of the at least nine federal agencies with whom the Office regularly interacts: ATF, DEA, DOJ, FBI, ICE, IRS, U.S. Marshal Service, U.S. Postal Inspection, and U.S. Secret Service. Collecting the emails of hundreds of employees for correspondence with hundreds more of those agencies is only the first step and not one that can be done in a complete fashion because there may well be another federal agency (or another non-profit) not included in what has already been a thorough attempt to compile such lists. After collection, conducting further review to determine if the correspondence is a "reporting event" under the Rule is an even less straightforward step that will require significant individualized review.

10. The inclusion of "automobile theft," "burglary," and "riot" as "violent crime," 1 TAC § 56.2(7), complicates review and requires the creation of new means of compiling and retaining records. Using the definition of "violent crime" in the Adopted Rule, there were 5,234 cases of "violent crime" in Fiscal Year 2024 (September 1, 2023 to October 1, 2024). Because "automobile theft" is not a specifically labeled offense in Texas, it is hard to guarantee accuracy in even this first step. While the line between a riot, particularly one involving only property damage or disruption, and a lawful First Amendment-protected protest is not always clear, the inclusion of riot

and burglary expand "violent crime" well beyond what prosecutors commonly think of as a "violent crime." The case files for those 5,234 cases (and all others from the time period of January 1, 2021 until April 2, 2025; March 1, 2025 until May 31, 2025; and thereafter quarterly) would have to be reviewed individually to determine if such would fit into the category where "no indictment was issued, the case was resolved by deferred prosecution or a similar program or all charges were dropped." 1 TAC § 56.3(a)(7).

11. The Office's case management software, Odyssey, does not have the capability of searching our case files for arrest. Arrest/booking information is stored at the Fort Bend County Jail of which my Office only has limited access. Fort Bend County's IT Department, whose executive director reports to the County's Commissioners and not to me, would have to develop search criteria for the information sought by the Rule. It would then fall to my Office individually reviewed—a time-consuming exercise even if all materials could be accurately collected.

12. The Preamble to the Final Rule states that "[r]eporting entities currently routinely submit their entire case files, including all of the types of information specified in the comments to the OAG in various manners and in compliance with other statutes that only generally require disclosure of information to the OAG." 50 TEX. REG. 2176. The Office does not routinely submit criminal case files or correspondence. Since I became the District

Attorney for the 268th Judicial District of Texas on January 1, 2019, the Office has not produced in any instance a criminal case file to the Attorney General. Without the Adopted Rule, the Office would only produce a criminal case file to the Office of the Attorney General in the event the Fort Bend DAO has recused itself from a case and the Office of the Attorney General has agreed to the prosecute the matter. Case files contain confidential information or otherwise protected information, release of which is prohibited by law or would otherwise infringe upon the rights of victim witnesses, grand jury participants, law enforcement officials, or accused defendants.

13. The Office will need at a minimum 2 full-time employees ("FTE") at a cost of at least $292,000 per year, inclusive of benefits, equipment, and training. While the Office has apprised of needing at least one new person, the Office will need at least another assistant prosecuting attorney to avoid significant reductions in prosecutions. Additionally the Fort Bend County IT Department will require at a minimum 2 FTE (data analyst and programmer) at a cost of at least $225,000 annually. With respect to IT, however, it is more likely that such will have to be contracted out at a substantial cost of $120/hour. There most likely will be a cost for additional software yet to be determined.

14. The Adopted Rule offers no recourse and no avenue for administrative appeal of any decision made by the Defendants or the Oversight

Advisory Committee. Instead, § 56.8 purports to give Attorney General authority to initiate a removal action or a proceeding in quo warranto to produce the requested information regardless of any other legal restriction that may counsel against disclosure.

15.     Thus, my Office must prepare, under consequence of removal from office, for the possibility of having to turn over four years of data, correspondence, and certain case files, in twelve categories, by July 1, 2025. Many of the categories require electronic searches, the results of which implicate thousands of cases that must be reviewed in detail to establish whether they include required information and records. It is difficult to know if the assumptions we would have to make about any undefined term's meaning would  be viewed as compliant reporting.

16.     Injunctive relief is justified here because compliance with the Adopted Rule has created and will continue to impose a tremendous burden on the Office and has significantly and adversely affected the ongoing operations of the Office and if left intact will continue to seriously undermine our constitutional core duties as prosecutors and incur significant unrecoverable financial expense.

I declare under the penalty of perjury that all the foregoing is true and correct. Executed in Fort Bend County, Texas, this the 13th day of June, 2025.

Brian M. Middleton
Fort Bend County District Attorney

**EXHIBIT 3**

**PLAINTIFFS' SUPPLEMENT AND FURTHER ARGUMENT IN**

**SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY**

**INJUNCTION**

**CAUSE NO. D-1-GN-25-003581**


**DECLARATION OF SHAWN W. DICK**

**DATED JUNE 13, 2025**

Supp. App. 031

| | | |
|---|---|---|
| BRIAN M. MIDDLETON, *in his official capacity as District Attorney of Fort Bend County, Texas (268th Judicial District); and* SHAWN W. DICK, *in his official capacity as District Attorney of Williamson County, Texas (26th Judicial District),* entire | § § § § § § § § § § § § § § | IN THE DISTRICT COURT |
| | § § | |
| *Plaintiffs,* | § § | |
| v. | § | 98th JUDICIAL DISTRICT |
| | § | |
| WARREN KENNETH PAXTON, JR., *in his official capacity as Texas Attorney General,* and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS, | § § § § § § § § § § § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## DECLARATION OF SHAWN DICK

I, Shawn W. Dick, being at least eighteen years of age, state as follows:

1. I am the elected District Attorney for the 26th Judicial District of Texas ("District Attorney") and have served as the District Attorney for the past 8.5 years. Prior to being elected as the District Attorney I served as an assistant prosecutor in the Harris County District Attorney Office for over 4 years and an assistant felony prosecutor in the District Attorney's office in Williamson County for 4 years.

2. Based on my training, education, experience as a prosecutor in the State of Texas and current position of District Attorney, I am familiar with the statutory and

1

Supp. App. 032

constitutional duties and core functions of Texas prosecutors. I am familiar with the collection, retention and storage of data, documents and media obtained in district attorney offices across the state and am intimately familiar with those matters in the office of the District Attorney for the 26th Judicial District of Texas. ("Office").

3. While the legal basis for injunctive relief are set out in the verified Original Petition and Application for Temporary Injunction, as well as Plaintiffs' Supplement and Further Argument in Support of Plaintiffs' Application for a Temporary Injunction brief, this declaration is intended to set out the factual basis for the requested relief and to demonstrate the immediate and irreparable harm caused to our office, as well as harm to other prosecutors, county plaintiffs, and our communities. The harm will be ongoing until such time as a Court stops this unconstitutional action of the Office of Attorney General ("OAG").

4. I have read and am familiar with 1 Tex. Admin. Code §§ 56.1-56.10, adopted by the OAG (the "Adopted Rule"). The Adopted Rule requires reporting entities to produce initial, quarterly, and annual reports to the OAG. As District Attorney, in an effort to comply with the new Adopted Rule, I have been overseeing the collection of data and case files for production of initial, quarterly, and annual reports dictated by the Adopted Rule. In that effort, I have had the help of an outside consultant, several of my assistant district attorneys and staff, as well as employees of the County IT department. The Adopted Rule requires the reports to be submitted to OAG within the next three (3) weeks. The most burdensome report (initial report) is due July 1, 2025, and spans four years of arrests and prosecutions (initial report which covers January

2

Supp. App. 033

1, 2021-April 2, 2025). The first quarterly report is due June 30, 2025 (covering March 1, 2025-May 31, 2025).

5. Compliance with the Adopted Rule has created and will continue to impose a tremendous burden on the Office and has significantly and adversely affected the ongoing operations of the Office and, if left intact, will continue to seriously undermine our constitutional core duties as prosecutors and incur significant financial expense.

6. The Office handles thousands of criminal cases each year. From January 2021 to April 2, 2025, the Office received over 15,000 charges in our Intake Division.

7. The Adopted Rule's reporting requirements dictates the Office to produce "case files" in connection with three separate categories. 1 Tex. Admin. Code § 56.3(a)(4), (5) & (6). The Preamble to the Adopted Rule states that "[r]eporting entities currently routinely submit their entire case files, including all of the types of information specified in the comments to the OAG in various manners and in compliance with other statutes that only generally require disclosure of information to the OAG." 50 TexReg 2176. Our Office does not submit entire criminal case files to the OAG unless the Office has recused itself from a case and the OAG has agreed to prosecute the case. To my knowledge, I am not aware of any case file that was produced to the OAG without involving a recusal since I was elected and began serving as District Attorney in 2017.

8. The Adopted Rule places an extraordinary burden on the prosecutors of these counties to continuously weigh the dangers of being accused of violating the Adopted Rule or violating long-standing state and federal laws and regulations

3

Supp. App. 034

that protect the privacy of crime victims, witnesses, law enforcement officials and accused defendants, as well as the integrity of criminal prosecutions. Many of these types of information are protected under existing federal and state laws and it is unclear, at best, the legal and ethical consequences of any such disclosure to the OAG.

9. An example of the burdensome nature of the Adopted Rule's reporting requirements dictates the Office to produce all "correspondence" in connection with five separate categories:

- "All correspondence requested by OAG's Oversight Committee for a matter listed in response to paragraph (7)." 1 Tex. Admin. Code § 56.3(a)(8) ("[t]he number of instances that an arrest was made for a violent crime but no indictment was issued, the case was resolved by deferred prosecution or a similar program or all charges were dropped.")

- "All correspondence and other documentation describing and analyzing a reporting entity's policy not to indict a category or sub-category of criminal offenses." *Id.* § 56.3(a)(9).

- "All correspondence with any employee of a federal agency regarding a decision whether to indict an individual." *Id.* § 56.3(a)(10).

- "All correspondence with any non-profit organization regarding a decision whether to indict an individual." *Id.* § 56.3(a)(11).

- All correspondence written at any time by an assistant district attorney . . . regarding the attorney's resignation under a formal or informal complaint process." *Id.* § 56.3(a)(12).

4

Supp. App. 035

10.     "Correspondence" is defined broadly to include "any email, letter, memorandum, instant message, text message, or direct message, received or issued by an employee of the reporting entity." *Id.* § 56.2(2). Office policy requires that any "Correspondence and communications relating to a case shall be attached as a Document and/or included as a Note" in the Office's Case Management Software, Odyssey. These notes and documents are not searchable and would require going into each case file in Odyssey individually in order to read the notes or documents to determine if they would require disclosure under the Rule. Since January 2021, there over 13,000 Digital Case Files (control numbers) in Odyssey and there is no possibility of accurately completing any such review of notes and documents in Odyssey. With regard to "instant message, text message, or direct message," Office policy further provides that "Digital communications (such as texting) with defense attorneys, law enforcement, or others shall not be used for substantive communications concerning a case." If there were occasional incidents where the policy was not complied with by staff there is no way to search, gather or produce such information. Because none of this correspondence was previously tracked by the Office, currently there is no pre-existing way to identify this information to comply with the rule. Given the breath of this definition, we began our efforts with compliance by working with Williamson County's IT to identify emails of current and former employees. From January 1, 2021, until April 2, 2025, the period covered by the initial report, the Office had approximately 80 employees, including approximately 52 attorneys. The results obtained so far have not been productive.

5

Supp. App. 036

Since we have not previously tracked or flagged the information sought in these two requests, compiling lists of nonprofit names, federal email addresses, and relevant terms will be impossible to complete in an accurate fashion.

13.     The Adopted Rule requires the Office to provide the "number of instances that an arrest was made for a violent crime, but no indictment was issued, the case was resolved by deferred prosecution or a similar program, or all charges were dropped." 1 Tex. Admin. Code § 56.3(a)(7). The Adopted Rule further defines "violent crime" to include "automobile theft." *Id.* § 56.2(7). "Automobile theft" is not a specifically labeled offense in Texas. Here again, this is not information my office tracks. Additionally, our case management software, Odyssey, apparently does not have the capability of searching our case files for arrest. Arrest/booking information is stored at the Williamson County Jail of which my Office has only limited access. Therefore, to make an effort to comply, we once again engaged Williamson County's IT Department which works with my Office but not FOR my Office (the County IT Department is under the direction of other independently elected officials), to develop search criteria for the information sought by this rule. The data we have received to date indicates over 5,000 arrests using the definition of "violent crime' in the Adopted Rule for the relevant time period. These cases will have to be individually reviewed to determine if the disposition fell into one of the categories sought ("no indictment, deferred prosecution, or all charges dropped"). The amount of time to perform this task is hard to estimate but no less than 500 hours. (assuming staff was available to review 100 cases a day for 50 days)

14.     Further, and most importantly, the time required to adequately collect the data, ascertain the information, and produce the information sought by Adopted Rule take my

6

employees away from the customary duties and core prosecutorial functions they are hired to perform. My constitutional duty is to see that justice is done; to do that we must have sufficient time to investigate, prepare and try cases on a regular basis. The Adopted Rule, unless declared invalid will cost the tax payers of Williamson County an exorbitant sum of money over the next several years. The Williamson County planning and budget office, as well as the County Manager, have estimated that the District Attorney's Office will need, at a minimum, five (5) full time employees ("FTEs") at a cost of $652,949 per year including salary, FICA, retirement, benefits and associated cost, The Williamson County Attorney's Office, which prosecutes misdemeanors in Williamson County, has already received a position for one attorney FTE at a cost of $122,968 (inclusive of all benefits) per year and will incur future expenses of $481,977 per year, which includes four (4) additional FTEs, in order to comply with the Adopted Rule. Additionally the Williamson County IT Department will require at a minimum one (1) FTE at a cost of $111,072 (inclusive of all benefits) per year because of the demands of compliance. There most likely will be cost for additional software yet to be determined. This cost will be ongoing year after year and will naturally escalate with inflation. To date my Office has budgeted $20,000 for an outside consultant to draft responses for the initial and quarterly responses due June 30 and July 1, 2025. In assisting the consultant in the process of searching, retrieving, reviewing and producing the initial and quarterly report my staff has already spent over 200 hours. I have devoted over eighty (80) hours personally on the project to date and expect to devote much more time in the coming weeks. This harm will be ongoing, as the future quarterly and annual compliance requirements will continue to undermine our resources.

7

Supp. App. 038

15.    The Adopted Rule mandates the creation of an Oversight Advisory Committee, whose members are selected by the Attorney General. This Committee has the unlimited ability to demand complete case files for whatever reason the Committee provides. The unlimited scope of information the Adopted Rule covers creates an unpredictable cost to Plaintiffs that can increase exponentially at any given time. This unpredictability creates a requirement for our office to have staff and resources available at any given time to evaluate the risk of noncompliance with the Adopted Rule while at the same time potentially failing to meet the requirements of numerous privacy rights, confidentiality laws, and other statutory and regulatory provisions prohibiting release of certain case information and communications as previously reference.

16.    Under Section 56.8 of the Adopted Rule, the OAG has the extraordinary power to unilaterally decide if any prosecutor is in violation of the Adopted Rule and possesses the unilateral power of initiating a removal action, quo warranto proceeding, or other lawsuit to force me or another prosecutor to produce the requested information regardless of any other legal restriction that may counsel against disclosure.

17.    My Office must prepare, under consequence of removal from office, for the possibility of having to turn over four years of data, correspondence, and certain case files, in twelve categories, by July 1, 2025. Many of the categories require electronic searches, the results of which implicate thousands of cases that must be reviewed in detail to establish whether they include required information and records. Moreover. the vague language of

8

Supp. App. 039

some of these 12 categories makes it impossible to know if our assumptions about their meaning would even achieve compliant reporting.

18.     The Adopted Rule offers no recourse and no avenue for administrative appeal of decision made by Defendants or the Oversight Advisory Committee. Injunctive relief is justified here because compliance with the Adopted Rule has created and will continue to impose a tremendous burden on the Office and has significantly and adversely affected the ongoing operations of the Office and if left intact will continue to seriously undermine our constitutional core duties as prosecutors and incur significant unrecoverable financial expenses.

_____

Shawn W. Dick
Williamson County District Attorney

## VERIFICATION BY UNSWORN DECLARATION

My name is Shawn W. Dick, and I am the District Attorney for the 26th Judicial District of Texas (Williamson County). I declare under penalty of perjury that the facts stated in the foregoing are true and correct.

Executed in Williamson County, State of Texas, on this 13th day of June, 2025.

9

Supp. App. 040

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Justin Pfeiffer on behalf of Justin Pfeiffer
Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Envelope ID: 102018958
Filing Code Description: Amended Filing
Filing Description: PLAINTIFFS' SUPPLEMENT AND FURTHER ARGUMENT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION
Status as of 6/16/2025 2:48 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Randy Leavitt | 12098300 | randy@randyleavitt.com | 6/13/2025 8:03:29 PM | SENT |
| Justin Pfeiffer | | JPfeiffer@gavrilovlaw.com | 6/13/2025 8:03:29 PM | SENT |
| C. RobertHeath | | bheath@bickerstaff.com | 6/13/2025 8:03:29 PM | SENT |
| William HowardFarrell | | biff.farrell@oag.texas.gov | 6/13/2025 8:03:29 PM | SENT |

Supp. App. 041

6/16/2025 4:01 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-003581
Susan Schmidt

## CAUSE NO. D-1-GN-25-003581

| | | |
|---|---|---|
| **BRIAN M. MIDDLETON,** *in his official capacity as District Attorney of Fort Bend County, Texas (268th Judicial District)* **and SHAWN W. DICK,** *in his official capacity as District Attorney of Williamson County, Texas (26th Judicial District),* | § § § § § § § § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § § | |
| **v.** | § § § | **98th JUDICIAL DISTRICT** |
| **WARREN KENNETH PAXTON, JR.,** *in his official capacity as Texas Attorney General,* **and THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS,** | § § § § § § § § | |
| *Defendants.* | § | **TRAVIS COUNTY, TEXAS** |

### PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE TO PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION

Plaintiffs Brian M. Middleton, in his official capacity as the District Attorney for the 268th Judicial District of Texas (Fort Bend County) and Shawn W. Dick, in his official capacity as the District Attorney for the 26th Judicial District of Texas (Williamson County) (collectively, "Williamson/Fort Bend District Attorneys" or "Plaintiffs") respond to Defendants Warren Kenneth Paxton, Jr., in his official capacity as Texas Attorney and the Office

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 1

Supp. App. 042

of Attorney General of the State of Texas (collectively, "Attorney General" or "Defendants") Response to Plaintiffs' Original Verified Petition and Request for a Temporary Injunction as follows:

1. On May 16, 2025, Plaintiffs' filed the Original Verified Petition, which sought a temporary injunction to enjoin Defendants from enforcing and implementing the Attorney General's recently adopted "District and County Attorney Reporting Requirements, 50 TEX. REG. 2173–2182 (Mar. 28, 2025) (adopting 1 TAC Ch. 56) (hereinafter, the "Adopted Rule" or "Rule").

2. Also on May 16, the district attorneys (and county attorneys with criminal jurisdiction) for Travis and El Paso counties—joined by the counties themselves—filed a similar action. Cause No. D-1-GN-25-003445 ("Travis/El Paso Plaintiffs"). As did the criminal district attorneys for Dallas and Bexar counties and the district attorney for Harris County—also joined by the counties themselves. Cause No. D-1-GN-25-003531 ("Dallas/Bexar/El Paso Plaintiffs").

3. On June 13, 2025, Defendants filed an consolidated answer and general denial to all three petitions.[1] Defendants also filed a consolidated

---

[1] Such is completely proper as the three actions have been consolidated with the matter for the Travis/El Paso Plaintiffs designated as lead. Undersigned counsel maintain the separate style here merely to keep clear the group advancing a particular argument. The nature of replying to a June 13 response for a June 16 extraordinary writ hearing makes it difficult to obtain authority to make a substantive filing outside of the immediate group, particularly in light of the hearing.

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 2

Supp. App. 043

response in opposition to the similar (but not identical) applications for a temporary injunction on June 13.

4. The Williamson/Fort Bend District Attorneys' reply responds to two assertions in Defendants' Response: (a) "the Texas Legislature has continuously bestowed such broad authority and discretion upon the Attorney General since at least 1879" to obtain the materials compelled by the Adopted Rule [Resp. Br. at 2]; and (b) "*[e]ven if Rules were never adopted*, the OAG could request the information for which the district and county attorneys complain at any time so desired," [*id*. at 3 (emphasis in original)].

5. An examination of the historical context belies the Attorney General's assertion that the 1879 enactment of the predecessor to the § 41.006 of the Government Code provides rulemaking authority for the Adopted Rule. 50 Tex. Reg. at 2173. So do the actions of the most recent Legislature.

I.  **The Attorney General's Former Authority to Represent the State in Criminal Appellate Matters Does Not Provide Authority to Supervise the District and County Attorneys**.

6. The Attorney General attempts to muddy the historic record by asserting that "at least since 1879," "the Texas Legislature has continuously bestowed" the on the Attorney General the authority to request broad statutory reporting obligations. [Resp. Br. at 2 (citing TEX. CODE CRIM. PROC. art. 40

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 3

Supp. App. 044

(1879))].[2] What is missing is that before 1876, the Attorney General "had constitutional authority to represent the State in appeals of criminal cases, and it had statutory authority to do so until 1923." *Ex parte Taylor*, 36 S.W.3d 883, 878 (Tex. Crim. App. 2001) (per curiam).[3] The authority for the Attorney General to request materials from the district attorneys went away in 1925, which coincidentally is when the Attorney General's authority to represent the State in criminal matters did as well.

A.     **The 1876 Constitution's Division of the Authority for Final Review of Civil and Criminal Law Matters Informs the Entire Constitution and the Statutes of the Period.**

7.     The 1876 Constitution bifurcated the state's judicial power by vesting such into one Supreme Court and one Court of Appeals. TEX. CONST. of 1876 art. 5, § 1. The 1876 Constitution vested the Attorney General with express authority to "represent the State in all suits and pleas in the Supreme

---

[2] The Attorney General's response ignores the two other interconnected statutory provisions delineating the Attorney General's own obligation to prepare a report for the Governor on court operations statewide as detailed at ¶¶ 21–33 of the Williamson/Fort Bend District Attorneys' Original Verified Petition. The Williamson/Fort Bend District Attorneys also attach a chart ***immediately after*** the certificate of service illustrating the statutory provisions.

[3] In fact, the First Legislature required the attorney general to obtain from the several district attorneys "all the information necessary for [the attorney general's] compliance with the requisitions of" that report to the governor. [Act approved May 11, 1846, 1st Leg., R.S., § 5, 1846 Tex. Gen. Laws 206, 207, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1512, 1513 (Austin, Gammel Book Co. 1898).] Thus, the First Legislature the several district attorneys to provide to the attorney general the exact information the attorney general reported to the governor. [Act approved May 13, 1846, 1st Leg., R.S., § 4, 1846 Tex. Gen. Laws 295, 296, *reprinted in* H.P.N. GAMMEL, 2 The Laws of Texas 1822–1897, at 1601, 1602 (Austin, Gammel Book Co. 1898).]

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 4

Supp. App. 045

Court of the State in which the State may be a party." TEX. CONST. of 1876 art. 4, § 22. While the 1876 Constitution provided the Court of Appeals appellate jurisdiction over all "in ***all criminal cases***, of whatever grade." TEX. CONST. of 1876 art. 5, § 6 (emphasis added), the Framers did not confer on the Attorney General for the Court of Appeals it did for the Supreme Court.[4] The 1876 Constitution's use of the phrase "all criminal cases, of whatever grade" and lack of express assignment to the Attorney General indicates that the Attorney General was not a player in criminal prosecutions at ratification.

8.      In *State v, Stephens,* 663 S.W.3d 45 (Tex. Crim. App. 2021), the Attorney General asserted the Attorney General's debatable statutory criminal appellate jurisdiction proved the Attorney General's proved the constitutional basis for the Attorney General's independent prosecutorial authority. The Court of Criminal Appeals rejected that argument after extensive briefing— from the very same parties before the Court today. There, the Attorney General tried to expropriate prosecutorial authority in the "District and inferior courts," while here the Attorney General interferes with such authority through the Adopted Rule for the reasons all plaintiff groups have briefed.

---

[4] In 1891, a constitutional amendment changed the name of the Court of Appeals to the Court of Criminal Appeals and stripped its civil jurisdiction. 1891 Tex. Gen. Laws at 198. *reprinted in* H.P.N. GAMMEL, 10 The Laws of Texas 1822–1897, at 199–200; TEX. CONST. art. 5, § 5 (amended 1891).

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 5

Supp. App. 046

**B.** **The Legislature Repealed the Provision Providing the Attorney General Authority to Request Materials from the District and County Attorneys Just After the Legislature Created the Office of the State Prosecuting Attorney.**

9.      At ratification, criminal convictions proceeded before what a singular appellate court.[5] [Not until 1981 did the intermediate courts of appeals obtain jurisdiction over criminal appeals over than capital. Even then, the State did not have a right to appeal a criminal matter (except extraordinary writs).[6]]

10.     With one appellate court for criminal matters here in Austin, the Legislature Recognizing the burden on the district attorneys of defending criminal appeals in one appellate court located in Austin, the Legislature created one "Assistant Attorney General" position.[7] Even so, the position required a gubernatorial appointment and with advice and consent of the senate.[8] Not only did this position require a gubernatorial appointment, the

---

[5] The intermediate court of appeals did not exist until 1891. *See* TEX. S.J.R. 16, 22nd Leg., R.S., 1891 Tex. Gen. Laws 197, 198, *reprinted in* H.P.N. GAMMEL, 10 The Laws of Texas 1822–1897, at 199–200 (Austin, Gammel Book Co. 1898); TEX. CONST. art. 5, § 6 (added 1891).

[6] *Compare* TEX. CONST. OF 1876 art. 5, § 26 *with* TEX. S.J.R. 34, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114; TEX. CONST. art. 5, § 26 (amended 1987).

[7] Act approved Mar. 15, 1875, 14th Leg., 2nd R.S., ch. 122, § 1, 1875 Tex. Gen. Laws 179, 179–80, reprinted in H.P.N. GAMMEL, 8 The Laws of Texas 1822–1897, at 551–52 (Austin, Gammel Book Co. 1898).

[8] *Id.*

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 6

Supp. App. 047

Legislation placed this position in the Judicial Department for budgetary purposes by appropriating the same under the Court of Criminal Appeals.[9]

11. In 1923, the Legislative provided the position of the "attorney for the State before the Court of Criminal Appeals of Texas."[10] The position continued to be subject to gubernatorial appointment with the advice and consent of the Senate.[11] In 1931, the Legislature renamed the position as the "State Prosecuting Attorney."[12] The Legislature provided the Court of Criminal Appeals the authority to appoint the State Prosecuting Attorney.[13]

12. The historical context of the three interrelated statutory provisions thus has a clear purpose. Not only did the Legislature narrow the Attorney General's reporting responsibilities in 2003 as all plaintiff groups briefed, but the executive branch bore responsibility for criminal appellate matters in 1879. These blurred lines continued until the Legislature unblurred them by placing the responsibility under the Court of Criminal Appeal, which continues to this day as Chapter 42 of the Government Code.

---

[9] *See*, *e.g.*, Act of Aug. 29, 1911, 32nd Leg., 1st C.S., ch. 3, 1911 Tex. Gen. Laws 2, 17–18 (attorney general); 34 (salary of assistant attorney general underneath the Court of Criminal Appeals).

[10] Act of Mar. 30, 1923, 38th Leg., R.S., ch. 156, § 4, 1923 Tex. Gen. Laws 335, 335.

[11] Act of May 18, 1931, 42nd Leg., R.S. 1931, ch. 139, § 1, 1931 Tex. Gen. Laws 234, 234.

[12] *Id.*

[13] Act of May 18, 1931, 42nd Leg., R.S. 1931, ch. 139, § 1, 1931 Tex. Gen. Laws 234, 234.

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 7

Supp. App. 048

**II.    The Actions 89th Legislature Better Correspond with All Plaintiffs' Reading of §41.006 than that Presented by the Attorney General.**

13.    Under the Texas Constitution, the Governor has until June 22, 2025 to take action on enrolled legislation passed during the last 10 days of the legislative session. Among such enrolled bills, is H.B. 45, relating to the duty of the attorney general to represent the state in the prosecution of the criminal offense of trafficking of persons.

14.    While Plaintiffs here believe this legislation to be unconstitutional under *Stephens*, § 2 of the May 26, 2025 enrolled bill would provide the Attorney General certain authority under Chapter 20A of the Penal Code (Human Trafficking). Under "Provision of Information to the Attorney General" would be the authority to request from the local prosecuting attorneys nonpublic information for ***just*** human trafficking offenses "***only*** if the attorney general is representing the state in the prosecution of the criminal offense pursuant to [what would be codified] Section 402.103(a) or the local prosecuting attorney otherwise agrees to provision of the information under this subsection." (emphasis added).

15.    Thus, the present Legislature makes the link between turning over case files and prosecutorial actions.

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 8

Supp. App. 049

## PRAYER

16. For the foregoing reasons, the Williamson/Fort Bend District Attorneys respectfully request the Court grant their application for a temporary injunction enjoining Defendants from enforcing and implementing Texas Administrative Code Chapter 56 pending a final trial on the merits.

RESPECTFULLY SUBMITTED on this 16th of June, 2025.

/s/ Justin C. Pfeiffer
JUSTIN C. PFEIFFER (SBN 24091473)
*Counsel of Record*
GAVRILOV & BROOKS, PC
(Houston Office)
P.O. Box 56632
Houston, Texas 77256
[Tel.] (832) 312-7900
jpfeiffer@gavrilovlaw.com

COUNSEL FOR BRIAN M. MIDDLETON, IN HIS OFFICIAL CAPACITY AS FORT BEND COUNTY DISTRICT ATTORNEY (268TH JUDICIAL DISTRICT)

| | |
|---|---|
| | /s/ Randy T. Leavitt |
| C. ROBERT HEATH(SBN 09347500) | RANDY T. LEAVITT (SBN 12098300) |
| BICKERSTAFF HEATH DELGADO ACOSTA | *Counsel of Record* |
| 1601 S Mopac Expy. | LAW OFFICE OF RANDY T. LEAVITT |
| Suite 400 | 1301 Rio Grande St |
| Austin, TX 78746-7017 | Austin, TX 78701-1711 |
| [Tel.] (512) 404-7821 | [Tel.] (512) 476-4475 |
| bheath@bickerstaff.com | randy@randyleavitt.com |

COUNSEL FOR SHAWN M. DICK IN HIS OFFICIAL CAPACITY AS WILLIAMSON COUNTY DISTRICT ATTORNEY (26TH JUDICIAL DISTRICT)

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 9

Supp. App. 050

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, a true and correct copy of the foregoing document was forwarded to Defendants via email and all counsel of record by electronic filing in matter D-1-GN-25-003581 in accordance with the Texas Rules of Civil Procedure and Local Rules on June 16, 2025, and further a true and correct copy of the foregoing documented was served by email to counsel in consolidated matters as follows:

**Counsel for Defendants Warren Kenneth Paxton, Jr., Attorney General of Texas and the Office of the Attorney General of Texas:**

William H. "Biff" Farrell
Assistant Attorney General
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 979-5561
Facsimile: (512) 320-0667

**For Cause No. D-1-GN-25-003445 (459th Judicial District Court):**

*Attorneys for Travis County, Travis County Attorney Delia Garza, and Travis County District Attorney José Garza:*
Leslie W. Dippel
Executive County Attorney
Leslie.Dippel@traviscountytx.gov
Todd A. Clark
Assistant County Attorney
Todd.Clark@traviscountytx.gov
Cynthia W. Veidt
Assistant County Attorney

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Page 10

Supp. App. 051

Cynthia.Veidt@traviscountytx.gov
OFFICE OF DELIA GARZA
TRAVIS COUNTY ATTORNEY
P.O. Box 1748
Austin, Texas 78767
Telephone:  (512) 854-9513
Facsimile:   (512) 854-4808


***Attorneys for El Paso County District Attorney James Montoya, El Paso
County Attorney Christina Sanchez, and El Paso County:***
Christina Sanchez
El Paso County Attorney
ch.sanchez@epcountytx.gov
Bernardo Rafael Cruz
Assistant County Attorney
b.cruz@epcountytx.gov
OFFICE OF CHRISTINA SANCHEZ
EL PASO COUNTY ATTORNEY
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247


**For Cause No. D-1-GN-25-003531 (353rd Judicial District Court):**

***Counsel for Criminal District Attorney John Creuzot; Dallas County;
Criminal District Attorney Joe Gonzales; and Bexar County:***
Alexandria Oberman
Email: aoberman@milchev.com
Telephone: (202) 626-6049
Michael J. Satin (admitted *pro hac vice*)
Email: msatin@milchev.com
Telephone: (202) 626-6009
Laura G. Ferguson (admitted *pro hac vice*)
Email: lferguson@milchev.com
Telephone: (202) 626-5567
MILLER & CHEVALIER
CHARTERED
900 16th Street, NW
Washington, DC 20006
Facsimile: (202) 626-5801

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Supp. App. 052

***Counsel for District Attorney Sean Teare and Harris County:***
Jonathan G.C. Fombonne
Deputy County Attorney and First Assistant
Jonathan.Fombonne@harriscountytx.gov
Tiffany S. Bingham
Managing Counsel, Affirmative & Special Litigation Division
Tiffany.Bingham@harriscountytx.gov
Christopher Garza
Deputy Division Director, Affirmative & Special Litigation Division
Christopher.Garza@harriscountytx.gov

Office of The Harris County Attorney
CHRISTIAN D. MENEFEE
HARRIS COUNTY ATTORNEY
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*/s/ Justin C. Pfeiffer*
JUSTIN C. PFEIFFER (SBN 24091473)

Reply to Defendants' Response to Plaintiffs' Application for a Temporary Injunction
*District Attorneys Brian Middleton & Shawn Dick v. Attorney General Ken Paxton*

Supp. App. 053

# EVOLUTION OF SECTION 41.006

| 1879 | | |
|---|---|---|
| **TEX. CODE CRIM. PROC. art 29 (1879)** | **TEX. CODE CRIM. PROC. art. 30 (1879)** | **TEX. CODE CRIM. PROC. art. 30 (1879)** |
| **ART. 29.** He shall report to the governor on the first Monday of December, annually, and at such other times as the governor may require, the number of indictments which have been found by grand juries in this state for the preceding year; the number of informations filed in this state for the preceding year;· the offenses charged in such indictments or information; the number of arraignments, convictions and acquittals for each offense; the number of indictments and informations which have been disposed of without the intervention of a petit jury, with the cause and manner of such disposition; and also a summary of the judgments rendered on conviction, specifying the offense, the nature and amount of penalties imposed, and the amount of fines collected. | **ART. 30.** He may require the several district and county attorneys, clerks of the district, and county courts in the state, to communicate to him at such times as he may designate, and in such form as he may prescribe, all the information necessary for his compliance with the requirements of the preceding article. | **ART. 40.** District and county attorneys shall, when required by the attorney-general, report to him at such times, and in accordance with such forms as he may direct, such information as he may desire in relation to criminal matters and the interests of the state, in their districts and counties. |
| 1885 | | |
| Added: "This report shall also give a general summary of all the business, civil and criminal, disposed of by the Supreme Court and Court of Appeals, so far as the State of Texas may be a party to such litigation, and of all civil causes to which the State is a party prosecuted or defended by him in any other courts, State or Federal. *Act of March 28, 1885, 19th Legis., R.S., ch. 64, § 1.* | | |
| 1925 | | |
| TEX. REV. CIV. CODE tit. 70, ch. 4, art. 4413 (1925). | **Art. 30 Repealed** Tex. Code. Crim. Proc., § 3, art. 1 (1925); TEX. REV. CIV. CODE tit. final, § 2 (1925) | TEX. REV. CIV. CODE tit. 15, ch. 3, art. 333 (1925). |

Supp. App. 054

# EVOLUTION OF SECTION 41.006

| 2003 | | |
|---|---|---|
| **TEX. GOV'T CODE § 402.003**<br>The attorney general shall report to the governor on the first Monday of December of each even-numbered year. The report must include the following information for the preceding two years:<br>(1) a summary of the cases in which the state was a party that were acted on by the supreme court and court of criminal appeals; and<br>(2) a summary of civil cases in which the state was a party that were prosecuted or defended by the attorney general in other state or federal courts.<br><br>*Amended by Acts 2003, 78th Leg., ch. 691, § I, eff. Sept. I, 2003.*<br><br>**NOTE:** *the 2003 amendment deleted all AG reporting requirements regarding local criminal justice matters covered by the proposed rule. This is the current text of the provision.* | | |
| **Current Text** | | |
| Same as in 2003 | None | **§ 41.006. Report to Attorney General**<br>At the times and in the form that the attorney general directs, the district and county attorneys shall report to the attorney general the information from their districts and counties that the attorney general desires relating to criminal matters and the interests of the state.<br><br>*Acts 1985, 69th Leg., ch. 480, § 1, eff. Sept. 1, 1985.* |

Supp. App. 055

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Justin  Pfeiffer on behalf of Justin Pfeiffer
Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Envelope ID: 102028225
Filing Code Description: Answer/Response
Filing Description: PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE TO PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION
Status as of 6/16/2025 2:16 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Randy Leavitt | 12098300 | randy@randyleavitt.com | 6/16/2025 4:01:12 AM | SENT |
| Justin  Pfeiffer | | JPfeiffer@gavrilovlaw.com | 6/16/2025 4:01:12 AM | SENT |
| C. RobertHeath | | bheath@bickerstaff.com | 6/16/2025 4:01:12 AM | SENT |
| William  HowardFarrell | | biff.farrell@oag.texas.gov | 6/16/2025 4:01:12 AM | SENT |

Supp. App. 056

# VERIFICATION

STATE OF TEXAS                    §

COUNTY OF FORT BEND §

Before me, the undersigned notary, on this day personal appeared Justin C. Pfeiffer, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1.    "My name is Justin C. Pfeiffer. I am over 18 years of age, of sound mind, and can make this affidavit. The facts in this affidavit are true and correct.

2.    I am lead counsel for Appellee Brian M. Middleton in his official capacity as Fort Bend District Attorney (268th Judicial District) in Appellate Care No. 15-25-00116-CV.

3.    I certify that the above and foregoing are true and correct copies of the file-stamped documents as served on undersigned by the Travis County District Clerk's Office. TEX. R. APP. P. 34a(f).

_____
Justin C. Pfeiffer

SWORN AND SUBSCRIBED BEFORE ME on this the 18th day of August, 2025.

_____
Notary Public in and for the State of Texas

My commission expires: 6-5-2028

Supp. App. 057

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Justin  Pfeiffer on behalf of Justin Pfeiffer
Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Envelope ID: 104591456
Filing Code Description: Motion
Filing Description: Appellee Brian M. Middleton's Unopposed Motion to
Extend Time and Allow Requested Supplemental Clerk's Record be Filed
as a Supplemental Appendix to Response Brief to File Requested Clerk's
Record Material as a Supplemental Appendix to Corrected Response
Brief
Status as of 8/20/2025 7:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Christina Sanchez | 24062984 | christina.sanchez@epcounty.com | 8/20/2025 3:43:16 AM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Tiffany Bingham | 24012287 | tiffany.bingham@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Joshua Woods | | woods@wrightclosebarger.com | 8/20/2025 3:43:16 AM | SENT |
| Bradley W.Snead | | snead@wrightclosebarger.com | 8/20/2025 3:43:16 AM | SENT |
| Michael Adams-Hurta | | hurta@wrightclosebarger.com | 8/20/2025 3:43:16 AM | SENT |
| Eric Abels | | Eric.Abels@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Cynthia  W.Veidt | | cynthia.veidt@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Katharine Tafuri | | ktafuri@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Amanda Ruch | | amanda.ruch@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Leslie  W. Dippel | | Leslie.Dippel@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Todd A. Clark | | Todd.Clark@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Justin Pfeiffer on behalf of Justin Pfeiffer
Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Envelope ID: 104591456
Filing Code Description: Motion
Filing Description: Appellee Brian M. Middleton's Unopposed Motion to Extend Time and Allow Requested Supplemental Clerk's Record be Filed as a Supplemental Appendix to Response Brief to File Requested Clerk's Record Material as a Supplemental Appendix to Corrected Response Brief
Status as of 8/20/2025 7:17 AM CST

Case Contacts

| Todd A. Clark | | Todd.Clark@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
|---|---|---|---|---|
| Jonathan G.C. Fombonne | | Jonathan.Fombonne@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Tiffany S. Bingham | | Tiffany.Bingham@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Christopher Garza | | Christopher.Garza@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Justin C. Pfeiffer | | jpfeiffer@gavrilovlaw.com | 8/20/2025 3:43:16 AM | SENT |
| Christina Sanchez | | Ch.sanchez@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Bernardo Rafael Cruz | | b.cruz@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| C. RobertHeath | | bheath@bickerstaff.com | 8/20/2025 3:43:16 AM | SENT |
| William H. Farrell | | bill.farrell@oag.texas.gov | 8/20/2025 3:43:16 AM | ERROR |
| Cynthia W. Veidt | | Cyntia.Vedt@traviscountytx.gov | 8/20/2025 3:43:16 AM | ERROR |
| Randy T. Leavitt | | randy@randyleavitt.com | 8/20/2025 3:43:16 AM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Michael J. Statin | | mstatin@milchev.com | 8/20/2025 3:43:16 AM | ERROR |
| Jacob Beach | | Jacob.Beach@oag.texas.gov | 8/20/2025 3:43:16 AM | SENT |
| Michael J.Satin | | msatin@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Laura G.Ferguson | | lferguson@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Laura G. Ferguson | | lferguson@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| William H. Farrell H.Farrell | | bill.farrell@oag.texas.gov | 8/20/2025 3:43:16 AM | ERROR |
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Bradely W.Snead | | snead@wrightclosebarger.com | 8/20/2025 3:43:16 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Justin Pfeiffer on behalf of Justin Pfeiffer
Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Envelope ID: 104591456
Filing Code Description: Motion
Filing Description: Appellee Brian M. Middleton's Unopposed Motion to Extend Time and Allow Requested Supplemental Clerk's Record be Filed as a Supplemental Appendix to Response Brief to File Requested Clerk's Record Material as a Supplemental Appendix to Corrected Response Brief
Status as of 8/20/2025 7:17 AM CST

Case Contacts

| Bradely W.Snead | | snead@wrightclosebarger.com | 8/20/2025 3:43:16 AM | SENT |
|---|---|---|---|---|
| Bernardo Cruz | | b.cruz@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Alexandria Oberman Oberman | | aoberman@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Melissa Contreras | | m.contreras@epountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Isela Baeza | | i.baeza@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Isela Jones | | carl.jones@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Pamela Lopez | | Pam.Lopez@epcountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Amy Pollock | | amy.pollock@traviscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Michael J. Satin | | msatin@milchev.com | 8/20/2025 3:43:16 AM | SENT |
| Andrea Mintzer | | andrea.mintzer@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |
| Andrea Mintzer | | andrea.mintzer@harriscountytx.gov | 8/20/2025 3:43:16 AM | SENT |